HARRY R. GODFREY and MARY ANN GODFREY, Plaintiffs

v.

INTERNATIONAL MOVING CONSULTANTS, INC., and
OCEAN–AIR INTERNATIONAL, INC., Defendants

Civil No. 79-188

District Court of the Virgin Islands

Div. of St. Thomas and St. John

December 12, 1980

JOHN J. MAHON, ESQ., St. Thomas, V.I., *for plaintiffs*

RONALD T. MITCHELL, ESQ. (PALLME, ANDUZE, MITCHELL & DOW), St. Thomas, V.I., *for defendant Ocean-Air*

CHRISTIAN, *Chief Judge*

## MEMORANDUM AND ORDER

The Court is confronted with a proliferation of motions by defendant Ocean-Air International, Inc. (hereinafter "Ocean-Air"), each, on separate grounds, seeking dismissal of the complaint for (a) lack of personal jurisdiction, Fed. R. Civ. P. 12(b)(2); (b) improper venue,

Fed. R. Civ. P. 12(b)(3); (c) insufficient process, Fed. R. Civ. P. 12(b)(4) and (5); (d) failure to join a party under Rule 19, Fed. R. Civ. P. 12(b)(7); and (e) forum non conveniens, 5 V.I.C. § 4905. The motions will be denied in all respects.

In September of 1977, plaintiffs were residents of the Virgin Islands.[1] Plaintiff Harry Godfrey is a medical doctor, and at the time was employed by the United States Department of Health, Education and Welfare Center for Disease Control (hereinafter "Center"). On September 6, 1977, the Center, acting through its Atlanta, Georgia, office, contracted with Ocean-Air, on behalf of its employee, the plaintiff Dr. Godfrey, to have the plaintiffs' household goods transported from St. Thomas to Abidjan, Ivory Coast, as plaintiff Dr. Godfrey was being transferred there to a new assignment. Ocean-Air in turn contracted with Caribbean Forwarders of St. Thomas for the pick-up of the goods in St. Thomas and initial shipment of the goods to New York, where trans-shipment to Africa was to be arranged by Ocean-Air. Ocean-Air also contracted with Major Van Lines to receive the container of plaintiffs' goods at its warehouse in New Jersey, upon arrival of the goods in New York, and to keep the same in storage while they awaited further shipment to Africa. Sometime after the goods were delivered to the Major Van Lines' depot, that warehouse and all of its contents, including plaintiffs' goods, were destroyed by fire. Plaintiffs then brought this action against defendants International Moving Consultants, Inc.[2] and Ocean-Air for damages sustained as a result of the loss of their goods.

Defendant Ocean-Air countered with the instant motions. By Order dated April 21, 1980, this Court denied defendant's motion to dismiss for lack of personal jurisdiction brought under Fed. R. Civ. P. 12(b)(2), on the ground that no affidavits or documentation had been submitted to support Ocean-Air's contentions. The motion for dismissal on the grounds of insufficient service pursuant to Fed. R. Civ. P. 12(b)(4) and (5), although not specifically mentioned, was also denied by that Order, as the contention that service was improper was based solely on the allegation that there was no personal jurisdiction. The same Order also stayed defendant's motion to dismiss

---

[1] Both plaintiffs are currently residents of the Virgin Islands as well.

[2] International Moving Consultants, Inc., was made a defendant by error. Although Ocean-Air had originally contracted with International Moving Consultants, Inc., for the storage of plaintiffs' goods upon their arrival in New York, this contract was subsequently cancelled prior to its performance, and Ocean-Air then contracted with Major Van Lines for this purpose.

for improper venue, failure to join an indispensible party and forum non conveniens, so that defendant could file appropriate supporting materials. Defendant has since filed an affidavit in support of its several motions. Further, Ocean-Air argues that the Court must reconsider its ruling with respect to the defense of lack of personal jurisdiction. After full consideration of all contentions of Ocean-Air, this Court finds that none of the variety of reasons advanced for dismissal of this action are legally sufficient.

## PERSONAL JURISDICTION

█ Defendant Ocean-Air is a Pennsylvania corporation, with its principal place of business in Burgettstown, Pennsylvania. It is engaged in the business of moving goods, both domestically and internationally. As a foreign corporation, Ocean-Air is subject to the jurisdiction of the courts in the Virgin Islands only when it commits actions falling under the Virgin Islands long-arm statute, 5 V.I.C. § 4903,[3] unless Ocean-Air otherwise consents to the exercise of jurisdiction by the Virgin Islands courts.

█ █ Defendant contends that reconsideration of this court's prior ruling denying a motion to dismiss for lack of personal jurisdiction is compelled. In so ruling the Court did not look beyond the face of the complaint in making its decision that defendant's acts fell within the purview of 5 V.I.C. § 4903 because the defendant had not supplied sufficient documentation to support its motion. The defendant rightly points out that 5 V.I.C. § 4903 not only outlines the contacts necessary to acquire personal jurisdiction, but it also contains subject matter restrictions for cases involving nonresident defendants. 5 V.I.C. § 4903(b) limits this Court's exercise of its

---

[3] 5 V.I.C. § 4903 provides:
> (a) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's
>> (1) transacting any business in this territory;
>> (2) contracting to supply services or things in this territory;
>> (3) causing tortious injury by an act or omission in this territory;
>> (4) causing tortious injury in this territory by an act or omission outside this territory if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this territory;
>> (5) having an interest in, using, or possessing real property in this territory; or
>> (6) contracting to insure any person, property, or risk located within this territory at the time of contracting.
> (b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

adjudicatory authority to "a claim for relief arising from acts enumerated in this section". Thus, if a defendant has not engaged in the actions necessary to enable this Court to acquire personal jurisdiction, we also do not have subject matter jurisdiction over the claim. Ocean-Air therefore reasons that as subject matter jurisdiction is a fundamental and nonwaivable requirement which must be fully considered by the Court whenever it is brought to its attention, Fed. R. Civ. P. 12(h)(3), the issue of whether the defendant's actions fall within the purview of 5 V.I.C. § 4903(a) must be fully considered, and cannot be summarily dealt with. We agree that this issue should be given deliberate thought, but nevertheless conclude that there is personal jurisdiction over defendant Ocean-Air, as well as subject matter jurisdiction over this action.

 The proper method of testing jurisdiction over a nonresident defendant is to first determine whether the long-arm statute authorizes the Court to exercise its adjudicatory powers, and then secondly, to decide if such an exercise is constitutionally permissible. The Virgin Islands long-arm statute has been construed to authorize the exercise of jurisdiction to the fullest extent permissible under the due process clause of the United States Constitution;[4] Hendrickson v. Reg O Company, 17 V.I. 457 (D.C.V.I. 1980); Norman's on the Waterfront v. West Indies Corp., 10 V.I. 495, 509 (D.C.V.I. 1974); Jensen v. McInerney, 299 F.Supp. 1309, 1314–15 (D.C.V.I. 1969); so normally a constitutional analysis is all that would be necessary. However, the Court will discuss the applicability of the long-arm statute to the facts of this case, before turning to a constitutional analysis, the better to emphasize that the statutory language encompasses acts that are at the outer circumscription of the permissible exercise of jurisdiction, and thus set at rest any doubts left by the dicta in prior opinions, see, e.g., note 6, infra, regarding the statute's broad application.

The Court finds that defendant's activities within the Virgin Islands constituted "transacting (any) business in this territory" and "contracting to supply services or things in this territory," within the meaning of 5 V.I.C. § 4903(a)(1) and (2).

 Turning first to an analysis of the term "transacting business", this is a phrase found in long-arm statutes in a number of jurisdictions. Although such language is subject to a wide variety of

---

[4] 48 U.S.C. § 1561 makes the due process clause of the Fourteenth Amendment applicable to the Virgin Islands.

interpretations, it is clear that at the outer limits of the due process clause, transacting business can be only a single act which in fact amounts to the transaction of business within a state (or territory). *Williams Crane & Rigging v. B & L Systems,* 466 F.Supp. 956, 957 (E.D. Va. 1979). For example, Florida attorneys who solicited, by telephone and mail, a District of Columbia attorney to perform legal services in the District of Columbia for pending litigation, were found to be "transacting business" in the District of Columbia. *Mouzarires v. Baxter,* 48 U.S.L.W. 2462 (D.C. Ct. App., Dec. 21, 1979). Similarly, the New York Court of Appeals has held that a defendant who bid by telephone from California at an auction held in N.Y. had "transacted business" in N.Y. within the meaning of that state's long-arm statute. *Parke-Bernet Galleries, Inc. v. Franklyn,* 26 N.Y.2d 13, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970). The Seventh Circuit has found that the guarantors of a lease that was finally executed in Illinois and performed in Illinois were subject to the jurisdiction of the Illinois courts, despite the fact that some of the guarantors had never been physically present in Illinois. *O'Hare International Bank v. Hampton,* 437 F.2d 1173 (7th Cir. 1973).

 In the case before the Court, defendant's provision of moving services originating in the Virgin Islands constituted the transaction of business in the Virgin Islands. Defendant initially contracted with the Center to move the plaintiffs' possessions from the Virgin Islands. The defendant then contacted Caribbean Forwarders in St. Thomas to arrange for them to help fulfill Ocean-Air's obligations under its contract with the Center. The relationship between Ocean-Air and Caribbean Forwarders can be characterized as that of principal and agent,[5] pursuant to a statement on page 3 of defendant's memorandum supporting dismissal. "Such action and service as were needed in St. Thomas to commence the shipment of plaintiffs' goods from St. Thomas were performed by Caribbean Forwarders acting at *the request and expense of Ocean-Air.*" (Emphasis added.) Although there was no permanent relationship between the two parties, this does not affect the characterization of the relationship, for an agency may be "limited to some

---

[5] Agency is defined in the Restatement (Second) of Agency § 1 as follows:

"(1) Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.

(2) The one for whom action is to be taken is the principal.

(3) The one who is to act is the agent."

particular object or the accomplishment of some particular transaction." 3 Am.Jur.2d § 36 at 441. In sum, through its agent Caribbean Forwarders, defendant transacted the business of moving the plaintiffs from the Virgin Islands.

■ Defendant also contracted to supply services in the Virgin Islands within the meaning of 5 V.I.C. § 4903(a)(2). Although we have restrictively interpreted this subsection in prior dicta,[6] this Court again emphasizes that this section should be so interpreted that its reach is coextensive with the limits of due process. Thus, all that is required by a literal interpretation of the statutory language is that the contract be performed in the Virgin Islands and that the cause of action arise out of the contract. Accord Wilkins v. Mason Shoe Manufacturing Co., 17 V.I. 138, 142 (Terr. Ct. V.I. 1980) ("a requirement that all three of the above tests must be met in all contract cases may demand more than constitutionally is required"). In this case, the contract to provide moving services was performed, in part, in the Virgin Islands by defendant's agent, and plaintiffs' cause of action arose out of defendant's improper performance of the services it contracted to provide, therefore bringing this cause within subsection (2). This Court thus has personal jurisdiction over the defendant under either subsection (1) or subsection (2) of our long-arm statute.

■ This forum also has subject matter jurisdiction over the plaintiffs' claim under 5 V.I.C. § 4903(b). That section provides that when the section is used to obtain jurisdiction over a defendant "only a claim for relief arising from acts enumerated in this section may be asserted against him." Although the destruction of plaintiffs' goods by fire occurred in New Jersey rather than in the Virgin Islands, subject matter jursidiction exists as the claim arose from the same "business transaction" or "contract" which subjects the defendant to personal jurisdiction—i.e. the providing of moving services to the plaintiffs by defendant from the Virgin Islands to Abidjan.

■ The exercise of jurisdiction by this Court over the defendant Ocean-Air is also permissible under the constitutional tests enunciated by the United States Supreme Court. The due process clause

---

[6] See Hendrickson, supra, at 463, "subsection (2) can be interpreted to require: (1) that the contract be entered into in the Virgin Islands; (2) that the goods be shipped to this territory, and; (3) that the cause of action arise out of the contract." Subsection (2) was not applicable in Hendrickson because the cause of action arose out of a tort, not a contract.

permits the exercise of in personam jurisdiction over a particular defendant only when the defendant has such minimum contacts with the forum that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). This limitation is imposed in order to protect defendants from the burdens of litigating in an inconvenient and unconnected jurisdiction and to insure that state and territorial tribunals do not infringe on each other's sovereignty. World-Wide Volkswagen Corp. v. Woodson, 48 U.S.L.W. 4079, 4081 (Jan. 21, 1980).

The mode of analysis used to determine whether the exercise of jurisdiction is fair and reasonable under the circumstances, and thus satisfies the due process test, is to balance a number of factors. The relevant considerations include the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining relief at the particular forum, and the relevant contacts the defendant has with the forum, measured against the burden of the defendant in defending in that forum. See World-Wide Volkswagen, supra. Although the burden on the defendant is presently given added heft in this formula, see World-Wide Volkswagen, supra, at 4081, there is a trend toward weighing all factors equally. See, e.g., World-Wide Volkswagen, supra, at 4086 (Brennan, J., dissenting) ("the interests of the forum state and other parties loom large in today's world and surely are entitled to as much weight as are the interests of the defendant").

Applying the balancing test to the facts of this case, the interest of the Virgin Islands in this litigation is strong. The Virgin Islands has a "manifest interest in providing effective means of redress for its residents" when their personal goods are lost, damaged or destroyed during the course of transport. McGee v. International Life Insurance Co., 355 U.S. 220, 223 (1957). Meriting especial consideration is the fact that the Virgin Islands relies on shipping and air freight for its survival as a twentieth century community. The Virgin Islands are relatively small islands with almost no local agriculture or manufacturing. As a result, almost every item sold in the Virgin Islands must be either shipped or flown in. By and large Virgin Islands residents use perforce the various channels of transportation to obtain goods for personal use because of the scant selection of many consumer goods on the island. Furthermore, to a considerable extent, the Virgin Islands is a relatively transient community with a constant influx and outflow of people from the con-

tinental United States. Thus, household and other personal items are continually being transported by air and sea. The Virgin Islands residents would be at a severe disadvantage if they were forced to follow the freight carriers to any of the large number of distant places where an accident might occur with respect to items being transported. When claims are small, it is unlikely that a Virgin Islands resident could afford to travel to the foreign forum, thus insulating the freight carriers against judgment. See McGee, supra. Local residence makes the Virgin Islands one of the few convenient forums in which potential plaintiffs may bring such lawsuits. In sum, the Virgin Islands has a legitimate interest in making certain that the transporters of goods to and from the Virgin Islands, who essentially hold the lifeline of the Virgin Islands in their hands, will be required to respond to consumers for any untoward happenings in the course of their rendering these vital services.

 The interests of the plaintiffs in bringing the suit in the Virgin Islands are clear. The plaintiffs were Virgin Islands residents at the time the events which form the basis for this suit occurred and they are Virgin Islands residents now. The most convenient place for these plaintiffs to pursue their claims is in their home forum.

 Examining next, the contacts of defendant with this forum, the Court concludes that an adequate nexus between the Virgin Islands and the defendant is established. Although the defendant did not have any systematic or continuous links with the Virgin Islands,[7] the defendant purposefully availed itself of the privilege of conducting a business transaction in the Virgin Islands, Hanson v. Denckla, 357 U.S. 235, 253 (1958). The defendant voluntarily agreed to provide a service to Virgin Islands residents and made the necessary arrangements to have that service rendered in exchange for a sum of money. The defendant should have realized that it would be responsible for the consequences of its actions and thus could be subject to suit in this forum if its services proved unsatisfactory. If the defendant did not wish to assume the risk of suit in the Virgin Islands, the defendant should not have undertaken the mission of moving the goods of Virgin Islands residents. In sum, the contacts

---

[7] There is no evidence that Ocean-Air did or does any business in the Virgin Islands, other than the transaction which is the subject of this litigation, has any offices or employees located in the Virgin Islands, solicits business in the Virgin Islands or advertises in any media calculated to reach the Virgin Islands.

between the Virgin Islands and the defendant are sufficient to establish jurisdiction for this litigation for "the Constitution does not require that trial be held in the State which has the 'best contacts' with the defendant." World-Wide Volkswagen, supra, at 4083 (Brennan, J., dissenting).

 Finally, the defendant will not be subjected to an undue burden if it is required to defend the suit in the forum. The defendant is a corporation, presumably possessed of the wherewithal to travel to the Virgin Islands and the personnel available to participate in the lawsuit. Thus this litigation will not cause any "special hardship" to the extent that "the Constitution would require special consideration for the defendant's interests." World-Wide Volkswagen supra, at 4083 (Brennan, J., dissenting). Furthermore, although necessary witnesses may reside in New Jersey, the defendant will not have to bear the expense of transporting the witnesses to the Virgin Islands. This Court has allowed the use of video-taped depositions at trial, thus decreasing the costs of litigation when the testimony of foreign witnesses is required or simply desired.

In conclusion, we consider the exercise by this court of in personam jurisdiction over Ocean-Air to be constitutionally permissible. The Virgin Islands has a strong interest in permitting the litigation to go forward, the plaintiff is a resident of the forum, the defendant's activities at issue are adequately linked to the forum, and the burden of defending in the Virgin Islands is not unreasonable.

## SERVICE OF PROCESS

 Defendant alleges that service of process was "ineffectual and insufficient" because of the absence of a basis for in personam jurisdiction and for that reason also the complaint should be dismissed. Fed. R. Civ. P. 12(b)(4) and (5). However, as this Court has found that there is in personam jurisdiction over defendant Ocean-Air, and as no other deficiencies in the service of process have been alleged, the Court concludes that service was validly effected upon defendant Ocean-Air.

## VENUE

As another and further ground for dismissal, defendant contends that the action should be dismissed for improper venue. Fed. R. Civ. P. 12(b)(3). Defendant argues that the standards of venue prescribed

by 28 U.S.C. § 1391[8] have not been met and there is, therefore, a fatal defect in this regard. Because we are of the opinion that 28 U.S.C. § 1391 *does not apply to this action, there is no need to consider whether its requirements have been satisfied.*

"Venue refers to the system of rules governing the allocation of cases to particular courts within a judicial system." J. Friedenthal and A. Miller, Civil Procedure 34 (1975). The purpose of a venue statute is to provide a convenient place for the litigation. Venue rules are purely statutory without the constitutional restrictions that are placed on the exercise of jurisdiction. A distinction should always be made between jurisdiction which governs "the court's power to adjudicate" and venue which merely denominates "the place where the authority may be exercised." C. Wright, A. Miller & E. Cooper, 15 Federal Practice and Procedure: Jurisdiction § 3801 at 5 (1976). Therefore, it is entirely within the discretion of the Congress to determine what venue requirements will be imposed on the federal courts.

The federal district courts are of two types, and certain distinctions between them are important in the context of determining the applicability of the venue requirements of 28 U.S.C. § 1391. Those district courts located in the various states of the United States are "article III courts" because they were established by Congress pursuant to article III, section 1 of the United States Constitution,[9] and among the constitutional restrictions placed on those courts, is a limitation on the actions such courts may hear to those enumerated in

---

[8] 28 U.S.C. § 1391 in pertinent part is as follows:

"§ 1391. Venue generally

 (a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose.

 (b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law.

 (c) . . .

 (d) An alien may be sued in any district.

 (e) A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or any agency of the United States, or the United States, may . . . be brought in any judicial district in which. . . .

 (f) A civil action against a foreign state . . . may be brought. . . ."

[9] Article III, section 1 provides that "[t]he judicial power of the United States, shall be vested in one supreme court, and in such inferior courts as the Congress may from time to time establish. . . ."

article III, section 2 of the Constitution.[10] The District Court of the Virgin Islands is of the second type of district courts, commonly called "article I courts," because these courts are created pursuant to the authority granted Congress under article I, section 8.[11] The subject matter jurisdiction of article I courts is not limited by the constraints of article III; Congress can grant article I courts the authority to hear any causes which it deems are appropriate matters for these courts to adjudicate.[12] Thus the District Court of the Virgin Islands has been given "general original jurisdiction in all other causes in the Virgin Islands, exclusive jurisdiction over which is not conferred . . . upon the inferior courts of the Virgin Islands," in addition to the grant of jurisdiction to it over article III matters. 48 U.S.C. § 1612.

The logical interpretation of 28 U.S.C. § 1391 is that its venue requirements only apply to those causes of action enumerated in article III, section 2 and not to those cases wherein jurisdiction is based on an authorization that is peculiar to an article I court. On its face, § 1391 appears to deal with cases falling under article III only, as the statute is divided into sections setting forth different venue requirements for the various types of article III actions, see note 8, supra, but does not specify any rules for nonarticle III causes. Furthermore, common sense dictates that a statute generally distributing causes of action among federal courts would not apply to an

---

[10] The following is the relevant portion of article III, section 2:
"The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority; —to all Cases of admiralty and maritime Jurisdiction; —to Controversies to which the United States shall be a Party; —to Controversies between two or more States; —between a State and Citizens of another State; —between Citizens of different States; —between Citizens of the same State claiming Lands under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects."

[11] Article 1, section 8 provides that "Congress shall have Power. . . . To constitute Tribunals inferior to the Supreme Court. . . ."

[12] Congress' broad discretionary power to create article I courts in the territories as it sees fit is justified by the rationale that "article IV (of the Constitution) granted Congress the combined powers of a local and a general government over the territories. This plenary sovereign power included the right to establish courts, which, like state courts did not have to conform to article III requirements but could nonetheless exercise some of the subject matter jurisdiction described in article III . . ." (footnote omitted). Note, Article III Limits on Article I Courts: The Constitutionality of the Bankruptcy Court and the 1979 Magistrate Act, 80 Colum. L. Rev. 560, 572 (1980). See also American Insurance Co. v. Canter, 26 U.S. 511, 545–46 (1828); Ex Parte Bakelite Corp., 279 U.S. 438 (1929); C. Wright, Federal Courts § 11 (3d ed. 1976).

article I court when it is dealing with "local" cases, rather than adjudicating causes by virtue of their article III subject matter.

■ In the case at bar, this Court's exercise of its adjudicatory powers is based on its grant of authority to hear "causes in the Virgin Islands", 48 U.S.C. § 1612. The venue requirements of 28 U.S.C. § 1391, therefore, are inapplicable. Thus, as defendant has not cited a venue statute which would restrict our authority to hear the case sub judice, we decline to dismiss for improper venue.

## FORUM NON CONVENIENS

■ The defendant also urges dismissal on the ground of forum non conveniens. The Virgin Islands has adopted the doctrine of forum non conveniens by statute. 5 V.I.C. § 4905 provides:

§ 4905. Inconvenient Forum

When the court finds that in the interest of substantial justice the action should be heard in another forum, the court may stay or dismiss the action in whole or in part on any conditions that may be just.

Although a variety of factors may be considered when a court is evaluating a motion to dismiss on the ground of forum non conveniens,[13] "if the plaintiff is a citizen of the forum, a transfer rarely will be ordered regardless of where the cause occurred or the witnesses are located." J. Friedenthal and A. Miller, supra, at 39. As the plaintiffs are Virgin Islands residents, and the Court thinks it is important that their cause be determined in the Virgin Islands for the reasons herein set forth in the section on personal jurisdiction, this court will decline to exercise its discretion to dismiss this lawsuit under the doctrine of forum non conveniens.

## INDISPENSABLE PARTY

As its final thrust to the vitals of plaintiffs' claim, Ocean-Air contends for dismissal of this action under Fed. R. Civ. P. 12(b)(7) on the ground that plaintiffs have failed to join Major Van Lines, an indispensable party within the meaning of Fed. R. Civ. P. 19. Although the joinder of Major Van Lines would be permissible, its participation in this lawsuit is not mandated.

---

[13] See, e.g., J. Friedenthal and A. Miller, supra, at 39. "Some of the factors a court will consider on a forum non conveniens motion are location of the evidence, the cost of producing witnesses, the source of the governing law, the availability of procedures to compel the appearance of unwilling witnesses, and the original court's desire not to overburden taxpayers, jurors, or the judicial system with cases that only are tangentially related to the forum."

74

■ Fed. R. Civ. P. 19 provides in pertinent part:

(a) *Persons to be Joined if Feasible.* A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

(b) *Determination by Court Whenever Joinder not Feasible.* If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

. . .

Major Van Lines was the owner of the warehouse destroyed by fire, in which plaintiffs' goods were stored. It is not an indispensable party because "complete relief" can be accorded among the plaintiffs and defendant Ocean-Air without Major Van Lines' participation. As Ocean-Air is the party that contracted to move plaintiffs' goods, it is the party required to answer to the plaintiffs for their loss. Ocean-Air may in turn have a claim against other parties to which it allocated responsibility over plaintiffs' goods, but these

75

secondary claims will in no way affect the adjudication of the primary dispute between Ocean-Air and these plaintiffs. Furthermore, it is unlikely that the outcome of this litigation will affect the rights and liabilities existing between Ocean-Air and Major Van Lines. The liability of Major Van Lines to Ocean-Air for any judgment rendered against Ocean-Air in this litigation will most probably turn on an interpretation of their contract for the moving and storing of plaintiffs' goods. As that contract will not be at issue in this litigation, the court finds it unlikely that the respective rights of Ocean-Air and Major Van Lines will be in any way prejudiced if this suit is prosecuted to judgment. Dismissal under Fed. R. Civ. P. 12(b)(7), therefore, is not required.

ORDER

The premises considered and the Court being fully advised,

IT IS ORDERED that defendant's motions to dismiss be, and the same are hereby, DENIED.