**CITIBANK, N.A., Plaintiff**
**v.**
**EZRA CHAMMAH and ITAFIN, INC., Defendants**

Civil No. 145/1996

Territorial Court for the Virgin Islands

Division of St. Thomas and St. John

October 2, 2001

RON R. PENNINGTON, ESQ., Dudley Clark & Chan, St. Thomas, Virgin Islands, *Counsel for Plaintiff*

BENJAMIN CURRENCE, ESQ., Law Office of Benjamin Currence, St. Thomas, Virgin Islands, *Counsel for Defendants*

THOMAS-FRANCIS, *Judge*

## MEMORANDUM OPINION

(October 2, 2001)

Pending before the Court are the Motion and Renewed Motion of the Plaintiff Citibank, N.A. ("Citibank") for Summary Judgment; the Cross Motion of Defendant Chammah for Summary Judgment; the Motion of Defendants Ezra Chammah ("Chammah") and Itafin, Inc. ("Itafin") to Strike Plaintiff's Motion for Summary Judgment; and the Motion of Defendant Itafin to Dismiss Complaint Against itself. The Court will address each of these motions seriatim.

### Background

On September 18, 1990, Chammah executed a Promissory Note ("Note") with Citibank to secure payment for a loan in the amount of Seven Hundred Fifty Thousand Dollars ($750,000.00). He used a mortgage to secure payment of the Note, encumbering property located at Parcel No. 22 Estate Frenchman's Bay, No. 4 Frenchman's Bay Quarter, St. Thomas, Virgin Islands ("the Property"). Subsequently, Chammah requested that Citibank modify and extend the loan. Itafin, a corporation incorporated in New York, with real estate in Manhattan, New York and St. Thomas, U.S. Virgin Islands, has been made a party to this action as a guarantor. Itafin has a 59.5% interest in Green Cay Development Ltd. Partnership which owns approximately 300 acres of land planned for development in Estate Frenchman's Bay, St. Thomas, U.S.V.I. (Pl.'s Mot. for Summ. J., Muranelli Aff. Ex. A ¶2 at 2).

On October 14, 1994, Itafin executed the Guaranty in order to induce Citibank to extend the loan. (Pl.'s Mot. for Summ. J., Muranelli Aff. Ex. A ¶6 at 4). Chammah's signature appears on the Guaranty in his capacity as president of Itafin. Said Guaranty was unconditional and it expressly provided that it should be construed in accordance with the laws of New York and could not be modified, amended or terminated orally. On

October 19, 1994, Citibank and Chammah executed a Modification of Note and Mortgage in response to Chammah's request. A Letter Agreement dated March 24, 1995 which added other conditions to the modification was also executed.

On June 18, 1997, Citibank filed its first Motion for Summary Judgment asking the Court to grant relief in its favor as Chammah failed to make full payment by November 1, 1995, the maturity date of the Note. (Pl.'s Mot. for Summ. J., Muranelli Aff. Ex. A ¶14 at 6). Defendant Chammah opposed the motion contending that the ambiguity in the payment terms and maturity date of the Note contributed to his failure to make payment. He has included a Cross Motion for Summary Judgment with his opposition. Then, on June 27, 1997, both Defendants Chammah and Itafin filed a Motion to Strike Plaintiff's Motion for Summary Judgment claiming that Citibank failed to comply with the procedures for filing said motion as outlined in Rule 56.1 of the Local Rules of Civil Procedure. On July 23, 1997, Itafin then filed a Motion seeking to Dismiss the Complaint against it for lack of personal jurisdiction. Subsequently, on March 16, 1999, Citibank filed a Renewed Motion for Summary Judgment relying on the points and authorities argued in its original motion.

## I. Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure allows a court to enter summary judgment against a party "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The purpose of the summary judgment procedure is "to pierce the pleadings and to assess the proof in order to see whether there [is] a genuine need for trial." *LaFrance Equipment International Corp. v. Reed*, 20 V.I. 111, 113-15 [ILLEGIBLE WORDS] of fact are genuine only if the evidence [ILLEGIBLE WORDS] reasonable jury to return a verdict in favor of a non-moving party. *Logan v. Abramson Enter, Inc.*, 30 V.I. 72 (D.C.V.I. 1994). Any doubts as to the existence of genuine issues of material fact are to be resolved in favor of a non-moving party. *Desvi, Inc. v. Continental Ins. Co.*, 27 V.I. 408, 968 F.2d 307 (3d Cir. 1992). Thus, a party moving for summary judgment must carry its burden of establishing the absence of genuine issues of material fact.

*Skopband v. Allen-Williams Corp.*, 39 V.I. 220 (D.C.V.I. 1998). Once this burden is met, however, a non-moving party may not rest upon the mere allegations or denials of his pleadings but must set forth specific facts showing that there exists a genuine issue for trial pursuant to 56(e). *Celotex Corp. v. Catrett*, 477 U.S. 317, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).

In its Motion for Summary Judgment, Citibank avers that there are no genuine issues of material fact in the case at bar. In support thereof, Citibank submitted a copy of the Promissory Note and Mortgage Agreement between Chammah and itself, as well as an affidavit of its vice president and credit officer, John R. [ILLEGIBLE WORDS] Citibank also submitted a copy of the Modification of Note and Mortgage which extended to November 1, 1995, the time within which all outstanding payments on the Note became due under Section C3 of the document entitled "Revised Maturity Date." Additionally, Citibank submitted a copy of Letter Agreement dated March 24, 1995 notifying Chammah of his default on the note for [ILLEGIBLE WORDS] interest for the months of January, February and March 1995, and setting forth additional conditions to bring the payments current, in exchange for Citibank's agreement to forbear enforcing its rights and remedies under the Note. Section 4(iii) of said Agreement explicitly states:

> Except as expressly provided herein, the Note, the Mortgage and the other Documents shall remain in full force and effect in accordance with their respective terms and *this agreement shall not be construed to ... (iii) extend* (or constitute any agreement by Citibank to extend) the terms of the Note, the Mortgage or either of them or *the time for payment of any of the Obligations.*

(Letter agreement between Chammah and Citibank dated 3/24/95 at 4(iii)) (emphasis added).

Finally, Citibank submitted a copy of the Guaranty appointing Itafin as the guarantor on the Note; a copy of a letter dated September 11, 1995 serving as a reminder to Chammah that the note would be immediately due and payable on November 1, 1995; a copy of a letter dated November 29, 1995 advising Chammah that if he did not immediately pay the loan in full, Citibank would be forced to [ILLEGIBLE WORDS] against him; copies of Chammah's responses [ILLEGIBLE WORDS]

first and second set of interrogatories and requests for admissions served upon him by Citibank; and an affirmation of bill of cases.

## A. Chammah's Obligation under the Note and Mortgage

A court's primary consideration when construing a contract is the intent of the parties. *Mellon Bank N.A. v. Aetna Business Credit, Inc.*, [ILLEGIBLE WORDS] intent is manifested in the [ILLEGIBLE WORDS] and the strongest external sign of an agreement between the parties is the words they choose to use in the written contract. *Id.* Thus, a court must construe the contract in light of the plain meaning of its words. *Id.* at 1010. "When a written contract is clear and unequivocal, its meaning must be determined by its contents alone." *Id.*

In his opposition to Citibank's Motion for Summary Judgment, Chammah contends that there are material facts in dispute in the present case. However, he also makes a Cross Motion for Summary Judgment in which he asserts that summary judgment should be entered in his favor. This perplexes the Court as Chammah, throughout his memorandum offered in support of this motion, continues to emphasize the presence of genuine issues of material fact in this case. Hence, the Court will only address his opposition to the motion for summary judgment and will deny his cross motion.

In opposition to the motion for summary judgment, Chammah specifically argues that, pursuant to section 8(a) of the [ILLEGIBLE WORDS], he was given the option to extend the maturity [ILLEGIBLE WORD] of the loan provided that, among other conditions, "all payments were made on a timely basis." (Def. Chammah's Opp'n. to Pl.'s Mot. for Summ. J.). Finally, he argues that he reasonably believed that section 8(a) of the Letter Agreement [ILLEGIBLE WORDS] the loan to September 1, 1996. Chammah's claims are without merit.

In support of his argument, Chammah submitted an affidavit stating that two factors contributed to his failure to pay the note in full on the November 1, 1995 maturity date. These factors are (1) his understanding of the Letter Agreement and his past dealings and oral communications with Citibank; and (2) Citibank's request for a payment on the principal balance of the loan just one month prior to the maturity of the note.

Chammah has failed to provide evidence that his payments were made on a timely basis in response to the affidavit of the vice president and credit officer of Citibank which states that Chammah failed to make

required monthly interest payments due in January, February and March of 1995. In fact, Chammah has even failed to deny that any payments to Citibank were untimely. Chammah has also mistakenly characterized the date of the one time option to extend the term of the loan as September 1, 1996. Section 8(a) of the Modification of the Note and Mortgage clearly states that if certain conditions were met, Chammah would be given a one-time option "to extend the term of the loan for a period of one year immediately following the Revised Maturity Date. ..." That would have extended the maturity date of the loan to November 1, 1996 based on the "Revised Maturity Date" set forth in the Modification of Note and Mortgage.

Contracy to Chammah's "reasonable belief" that the Letter agreement extended the maturity date of the loan, said agreement does not speak to any such extension. In fact, the Agreement specifically states that it "shall not be construed to ... (iii) extend ... the time for payment of any of the obligations." Moreover, the letter of September 11, 1995 submitted to the Court by Citibank evidenced its notification to Chammah that full payment would become due on November 1, 1995, the revised maturity date indicated in the Modification of Note and Mortgage.

Likewise, Chammah's assertion that a payment obligation which was made due one month prior to the maturity date is an indication that Citibank intended to extend the already revised maturity date included in the Modification of Note and Mortgage is also without merit. The only issues before the Court with regard to Defendant Chammah's obligation are (1) the maturity date of the Note between Citibank and Chammah; and (2) Chammah's payment, *vel non*, of the loan in full by or on said maturity date. The record supports a finding that Chammah defaulted under the Note and Mortgage and that, therefore, there are no genuine issues of material facts upon which a reasonable jury could return a verdict in Chammah's favor. Accordingly, Summary Judgment for Citibank should be granted.

### B. Itafin's Obligation under the Guaranty Agreement

While Itafin has not filed an opposition to the Motion for Summary Judgment, the Court will address its obligation under the Guaranty in order to determine whether there are any genuine issues of material fact with regard to same. As stated above, the guaranty agreement between Itafin and Citibank expressly provided that the law of

New York is to be applied to interpret said agreement. "Great deference is given to the parties' consensual choice ... of law which is to govern their contractual relations." *Hess Oil Virgin Islands Corporation v. Ingersoll-Rand Company*, 19 V.I. 17, 21-23 (D.C.V.I. 1982); RESTATEMENT (SECOND) OF CONFLICTS OF LAW, § 187(1971).[1] Accordingly, forum selection clauses will be applied unless (1) the clause is a result of fraud or overreaching, (2) some strong Virgin Islands public policy would be violated if the clause is enforced, or (3) the opponent to the enforcement of such a clause would be forced to litigate in a jurisdiction that would be so seriously inconvenient to the opponent that it would be unreasonable. *General Engineering Corp. v. Martin Marietta Alumina*, 783 F.2d 352, 358 (3d Cir. 1986).

In the case at bar, the Court finds that New York law should be applied to interpret the guaranty agreement. First, there has been no claim by Itafin alleging that the forum selection clause was a result of fraud or overreaching. Second, there is no known Virgin Islands public policy against the application of New York law. Indeed, some of the statutes of the Virgin Islands have been modeled from New York statutes.[2] Third, litigation in the Virgin Islands would not be so seriously inconvenient to Itafin as to be unreasonable. Thus, the Court will examine the guaranty under applicable New York law.

■ As in the Virgin Islands, under New York law, a court may not go outside the written language of a guaranty agreement to vary the terms of the agreement if said language is clear and unambiguous on its face. *American Trust Company v. Sullivan*, 285 A.D. 1043, 140 N.Y.S.2d 184 (N.Y. App. Div. 1955); *Marcus v. Fabrikant*, 34 Misc. 2d 945, 229 N.Y.S.2d 304, 306 (N.Y. Sup. Ct. 1962). Thus, the parties to a guaranty agreement, absent an assertion of fraud or mutual mistake, may not use extrinsic evidence such as oral communications between the parties to modify or contradict the clear and unequivocal language of the guaranty. *Bank Leumi Trust Company of New York v. D'Evori International, Inc.*,

---

[1] In the absence of local law to the contrary, the restatements of the law shall be the rules of decision in the courts of the Virgin Islands in cases to which they are applicable. 1 V.I. CODE ANN. § 4 (1995).

[2] Chapters 1 and 3 of Title 15 of the Virgin Islands Code which is the governing law for Wills and Descent and Distribution for the Virgin islands, were derived from the New York Decedent Estate Law.

163 A.D.2d 26, 558 N.Y.S.2d 909, 915 (N.Y. App. Div. 1990); *Phillips v. Cioffi*, 204 A.D.2d 94, 611 N.Y.S.2d 181, 182 (N.Y. App. Div. 1994); *Orix Credit Alliance, Inc. v. N.Y. Bell Bagel, Inc.*, 222 A.D.2d 566, 635 N.Y.S.2d 303, 304 (N.Y. App. Div. 1995).

Upon reviewing the arguments and documents submitted, the Court finds that there are no genuine issues of material facts upon which a reasonable jury could return a verdict in Itafin's favor. It is clear that Itafin gave its unconditional promise to repay the loan upon Chammah's default. The Guaranty in pertinent part explicitly provides that "guarantor agrees promptly to pay, on Lender's demand, all sums of principal and interest payable under said Note and all other sums which may become due and payable under the Note, the Mortgage, the Modification and all other Loan Documents ... which are not paid by Borrower. ..." (Guaranty at 1.) Said Guaranty further provides that "the obligations of Guarantor hereunder are direct, unconditional and completely independent of the obligations of the Borrower." (Guaranty at 2.) There is no ambiguity in this language.

The only issue before the Court with regard to Defendant Itafin's obligation under the Guarantee is whether Itafin agreed to pay the note if Chammah defaulted. The record supports a finding that Itafin gave its unconditional guarantee of full repayment of the loan upon Chammah's default. Consequently, Citibank has the right to pursue this action for debt and foreclosure and has set forth a prima facie case for a ruling in its favor.

## II. Motion to Strike Motion for Summary Judgment

Both Defendants Chammah and Itafin have also filed a Motion to Strike Citibank's Motion for Summary Judgment claiming that Citibank failed to conform to Rule 56.1 of the Local Rules of Civil Procedure by filing the original motion directly with the Court instead of filing only its Notice of Motion for Summary Judgment until the Defendants were given the opportunity to reply. Citibank has not filed a response to this motion.

Rule 56.1(a)(1) of the Local Rules of Civil Procedure in pertinent part provides that a party moving for summary judgment "shall file *only* the notice of motion with the Clerk." Subsection (3) further provides that "after the motion has been addressed by all parties and is ready for submission to the Court, the movant shall file a cover letter and all

original papers received from all parties with the Clerk." There has never been such a filing requirement in the Territorial Court, however. The Local Rules of Civil Procedure specifically apply to the District Court of the Virgin Islands. Rule 7 of the Rules of the Territorial Court provides in pertinent part:

> The practice and procedure in the Territorial Court shall be governed by the Rules of the Territorial Court and, to the extent not inconsistent therewith, by the Rules of the District Court, the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure and the Federal Rules of Evidence

TERR. CT. R. 7. "Rule 7 does not mandate verbatim adoption of the practice and procedure of the District Court." *Government of the Virgin Islands v. Albert John Quetel*, 18 V.I. 145, 149 (Terr. Ct. 1982). The Court will, therefore, deny this motion.

Incidentally, both Defendants also failed to comply with Rule 56.1 in that they filed their original responses directly with the Court contrary to the procedures outlined in subsection (b) which provides that "an original and two copies of all opposition papers shall be served on the moving party...." LRCI 56.1(a)(1). That section further provides that "the respondent simultaneously shall file *only* a copy of the notice of response with the Clerk. ..." *Id.*

### III. Motion to Dismiss

Itafin's Motion to Dismiss the Complaint Against Defendant Itafin, Inc., is without merit. Itafin argues that this Court does not have personal jurisdiction over it. More specifically, it argues that Citibank's claim for relief does not arise from Itafin's business transactions in the Virgin Islands and that its ownership interest in St. Thomas property is irrelevant to Citibank's claims as there is no causal connection between its contacts with the Virgin Islands and the acts from which the present cause of action arose. Citibank opposes the motion and asserts that this Court may exercise personal jurisdiction over Itafin pursuant to 5 V.I.C. § 4903(a)(1) for Itafin's transaction of business in the territory.

"There are no general rules governing whether or not guarantors of contractual obligations fall within the constitutional power of the courts of a particular forum." *Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1225 (3d Cir. 1992). Therefore, "a court is required to

94

make an independent factual assessment of a defendant's contacts with the forum" to determine whether it may exercise jurisdiction over that defendant. *Id.* at 1224. In the Virgin Islands, a nonresident is subject to the jurisdiction of the courts of the Virgin Islands if he commits acts that fall under the long arm statute of the Virgin Islands, pursuant to 5 V.I.C. §§ 4901-4905, unless the nonresident otherwise consents to the exercise of jurisdiction by a Virgin Islands court. *Godfrey v. International Moving Consultants, Inc.*, 18 V.I. 60, 66 (D.C.V.I. 1980).

In making its determination regarding the exercise of personal jurisdiction, a court is required to make two inquiries: (1) whether the long arm statute allows the court to exercise its adjudicatory powers and (2) whether the court's exercise of these powers is permissible under the Fourteenth Amendment to the Constitution of the United States. *Id.* at 66. The long arm statute has been construed to "authorize the exercise of jurisdiction to the fullest extent permissible under the due process clause of the United States Constitution." *Id.*

Under the Virgin Islands long-arm statute, this Court may exercise personal jurisdiction over a nonresident if certain conditions are met. Title 5 of the Virgin Islands Code, § 4903(a)(5) allows this exercise of the Court's adjudicatory power if a claim for relief arises out of a nonresident's "interest in, using, or possessing real property" in the Virgin Islands. Applying the statute to the present facts, the Court finds that it may exercise its adjudicatory powers over Itafin. Chammah is the president as well as the owner of 98% of the voting stock of Itafin. In its response to interrogatories propounded by Citibank and filed with the Court on March 24, 1997, Itafin acknowledged that it is a Joint Venturer in the Limited Partnership of Green Gay Limited Partnership, U.S.V.I. which is organized under the laws of the Virgin Islands. (Def. Itafin's Response to Pltf's 2nd Set of Interrogs #8.) Itafin further acknowledged that it is "a limited partner of Green Cay Limited Partnership U.S.V.I. 1987 to present." (Def. Itafin's Response to Pl.'s 2nd Set of Interrogs. #13.) Additionally, Itafin has stated that Green Cay Limited Partnership, U.S.V.I. has owned, managed, leased or possessed real property in the territory. (Def. Itafin's Response to Pl.'s 2nd Set of Interrogs. #13.)

Moreover, among the documents filed by Citibank is the affidavit of John R. Muranelli, Vice President and credit officer of Citibank, N.A.'s Private Banking Group, in which he asserts that the decisions to grant Chammah the loan and modification were based, in part, on an

assessment of Itafin's value as the owner of a 59.5% interest in Green Cay Development Limited Partnership which owned approximately 300 acres of land located in Estate Frenchman's Bay, St. Thomas, U.S.V.I. which is planned for development. (Pl.'s Mot. for Summ. J., Muranelli Aff. Ex. A ¶2 at 2.) According to Muranelli, that land surrounded subject property on all sides and would be developed by Chammah. *Id.* Muranelli also asserts that Chammah made representations to the bank that Itafin developed real estate in the Virgin Islands and that "but for Chammah's ownership of Itafin, Inc., and Itafin's ownership of Virgin Islands real property," Chammah would not have qualified for the loan and modification. *Id.*

Above all, the Court also notes that the Guaranty which is the basis for Citibank's claim against Itafin, in pertinent part, states that Chammah is the majority shareholder of Itafin and that Itafin had "a financial interest in [Chammah] modifying such loan in accordance with the Modification." Based on the foregoing, the Court finds that there is sufficient evidence on the record to establish that the present claim arose from Chammah's and Itafin's interests in the mortgaged property. Accordingly, under the longarm statute there exists a basis for this Court's exercise of personal jurisdiction over Itafin arising from said property interest, thereby satisfying the first inquiry.

Under the second inquiry, this Court finds that its exercise of its adjudicatory powers over Itafin falls within the confines of the United States Constitution. Under the Due Process Clause of the Fourteenth Amendment, the test for determining whether a court may exercise *in personam* jurisdiction over a defendant is whether said defendant has sufficient minimum contacts with the forum such that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945). It is a reasonableness or fairness test which is designed to protect a defendant against litigating in an inconvenient forum and to ensure that state courts do not overreach their boundaries as coequal sovereigns with each other. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980). In making its determination a court must balance "the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining relief at the particular forum, and the relevant contacts the defendant has with the forum, measured against the burden of the defendant in defending in that

forum." *Godfrey*, 18 V.I. at 69. The defendant's burden is presently given more weight than the other factors. *Id.*

■ Upon review of the record, the Court finds that this Court's exercise of jurisdiction over Itafin does fall within constitutional limits. First, the Property which is at issue in this suit is located in St. Thomas and, as such, it is evident that the Virgin Islands has a strong interest in the disposition of said property as it does with all property located within its jurisdiction. Second, Citibank also has an interest in having the present dispute litigated in the Virgin Islands as the property is located in the Virgin Islands and any disposition of the property will necessarily affect the monies due and payable to it. Third, there also exists an adequate nexus between Itafin and the Virgin Islands to confer jurisdiction on this Court. As the record establishes, Itafin owns an interest in property located in the Virgin Islands and had a financial interest in guaranteeing the loan and modification of the loan to Chammah. Additionally, had it not been for Itafin's guaranty on Chammah's loan with Citibank, Citibank would not have granted the loan and modified the Note and Mortgage with Chammah. The Guaranty expressly states that as a condition to Citibank's modification of the loan, the guarantor must unconditionally guaranty payment of same.

In any event, "the Constitution does not require that trial be held in the State which has the 'best contacts' with the defendant." *World-Wide Volkswagen Corp.*, 444 U.S. at 301 (Brennan, J., dissenting). Itafin would not be substantially burdened if this matter is litigated in the territory. Litigation in this forum would not place an undue burden upon Itafin as it is a corporation with the necessary personnel available to participate in the present suit. If there are witnesses residing outside of the territory, the defendant may use video-taped depositions at trial with the Court's permission. Most importantly, however, Itafin should have anticipated that its guaranty of the loan to Chammah on property located in the Virgin Islands could have subjected it to litigation in the territory. While the Guaranty does contain a forum selection clause indicating which law should be applied in interpreting its language, it does not contain such a clause with regards to where litigation arising out of the agreement should be held.

Finally, the Court notes that the Guaranty in question expressly provides that:

Guarantor hereby specifically waives any and all defenses of any and every kind to any action or proceeding brought to enforce this Guaranty or any part of this Guaranty either at law or in equity, except the single defense that the entire sum claimed has actually been paid to the holder of the Note.

(Guaranty at 2). The District Court of the Virgin Islands has found that subject matter jurisdiction is a fundamental nonwaivable requirement which may be raised at any time. *Godfrey* at 65-66. Personal jurisdiction is quite different, however. While the former is an Article III and a statutory requirement, the latter is a due process requirement which recognizes and protects an individual liberty interest and, therefore, can be waived. *Ins. Corp. of Ireland v. Compagnie Des Bauxites*, 456 U.S. 694, 702-703, 72 L. Ed. 2d 492, 102 S. Ct. 2099 (1982). The only requirement for finding personal jurisdiction would then be that "the maintenance of the suit ... not offend 'traditional notions of fair play and substantial justice.'" *Id.* Thus, it would seem that Itafin did waive its right to raise the defense of lack of personal jurisdiction as the Court has already made this inquiry and has found that said requirement has been satisfied. Consequently, the Court finds its exercise of *in personam* jurisdiction over Itafin to be constitutionally permissible. An Order of even date follows.