**JOE HAROLD VANTERPOOL d/b/a VANTERPOOL ENTERPRISES,**
**Appellant/Plaintiff**

**v.**

**GOVERNMENT OF THE VIRGIN ISLANDS through the**
**DEPARTMENT OF PROPERTY & PROCUREMENT, DEPARTMENT**
**OF EDUCATION, DEPARTMENT OF HOUSING, PARKS, AND**
**RECREATION, DEPARTMENT OF TOURISM, and THE OFFICE OF**
**THE LIEUTENANT GOVERNOR OF THE VIRGIN ISLANDS,**
**Appellees/Defendants**

S. Ct. Civil No. 2013-0072

Supreme Court of the Virgin Islands

August 10, 2015

564

DAVID J. CATTIE, ESQ., The Cattie Firm, St. Thomas, USVI; DANIEL L. CEVALLOS, ESQ., Philadelphia, PA, *Attorneys for Appellant.*

PAMELA R. TEPPER, ESQ., JENNIFER LYNN AUGSPURGER, ESQ., Assistant Attorneys General, St. Thomas, USVI, *Attorneys for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and MOLLOY, *Designated Justice.*[1]

## OPINION OF THE COURT

### (August 10, 2015)

HODGE, *Chief Justice.* Appellant Joe Harold Vanterpool[2] appeals from a series of Superior Court rulings granting summary judgment to the Government of the Virgin Islands and later refusing to reconsider that ruling. For the reasons that follow, we reverse the grant of summary judgment and remand the case to the Superior Court for further proceedings.

### I. BACKGROUND

Hurricane Marilyn caused devastating damage to the Virgin Islands in September 1995. On April 2, 1996, the Government and Vanterpool

---

[1] Associate Justice Ive Arlington Swan is recused from this appeal. The Honorable Robert A. Molloy, a Judge of the Superior Court of the Virgin Islands, sits in his place by designation pursuant to title 4, section 24(a) of the Virgin Islands Code.

[2] Although all of the contracts that give rise to this appeal were entered into between the Government of the Virgin Islands and Vanterpool Enterprises, the record reflects that Vanterpool Enterprises is a sole proprietorship operated by Vanterpool that lacks a separate legal existence. Thus, unless context requires otherwise, all references to Vanterpool in this opinion should also be construed as references to Vanterpool Enterprises.

entered into two separate contracts to repair the Charlotte Amalie High School ("CAHS") and the Ulla F. Muller Elementary School ("Muller School") on the island of St. Thomas. The respective contracts provided that the Government would pay Vanterpool $3,262,300 for repairing CAHS and $660,750 for repairing the Muller School. Both of these contracts were stamped "Public Exigency."

Both contracts provided detailed specifications for what work should be performed. However, various government officials, including the Lieutenant Governor, the Commissioner of Education, the Commissioner of Tourism, and the Commissioner of Housing, Parks, and Recreation, requested that Vanterpool perform additional repair work in light of the emergency. After Vanterpool completed this additional work — which involved repairing several other schools and government facilities — he submitted invoices requesting payment of $6,792,589.35, in addition to the $3,262,300 and $660,750 provided for in the written contracts. While the Commissioner of Education transmitted these invoices to Governor Roy L. Schneider on November 19, 1998, and requested a confirming written order, no such order ever issued. Thus, the Government paid only the $3,262,300 and $660,750 authorized by the original written contracts, and did not issue any payments for the excess invoices. Although the Government entered into a third written contract with Vanterpool to retroactively pay him $649,789.50 for a portion of this additional work, Vanterpool continued to demand full payment for all of the work he performed pursuant to those oral requests.

On September 24, 2004, Vanterpool sued the Government in the Superior Court, requesting payment of the unpaid sums plus any applicable interest. The Government, after requesting an extension of time, filed its answer on February 22, 2005. After numerous proceedings not related to this appeal, as well as a nearly three-year period in which the case languished with no activity, Vanterpool filed a single document on October 14, 2011, titled "Plaintiff's Memorandum of Law in Support of its Motion for Summary Judgment," and then filed an amended version on October 18, 2011. The Government filed an opposition to that motion, as well as its own cross-motion for summary judgment, on November 8, 2011. Vanterpool filed a joint reply and opposition on November 30, 2011, and the Government filed its reply on December 20, 2011.

Although the matter had been fully briefed, the Superior Court did not immediately act on either parties' motions. Throughout the Superior

Court proceedings, the matter had been assigned to the Honorable Brenda J. Hollar. After Judge Hollar retired in November 2012, the case was not immediately reassigned to a different judge. In this situation, Vanterpool filed motions for a ruling on the outstanding motions on August 23, 2012, November 20, 2012, and May 20, 2013.

Eventually, on July 8, 2013, Vanterpool's case was assigned to the Honorable Kathleen Y. Mackay. However, on July 12, 2013, the Superior Court issued an opinion and order, which was signed "Hon. Michael C. Dunston for the Hon. Kathleen Mackay." (J.A. 544.) In its decision, the Superior Court held, in a footnote, that Vanterpool had failed to comply with Local Rule of Civil Procedure 56.1 of the United States District Court of the Virgin Islands, in that he failed to submit a separate undisputed statement of material facts. The Superior Court held that, as authorized by District Court Rule 56.1, it would treat the statement of facts set forth in the Government's opposition and cross-motion as undisputed. Accepting the Government's factual representations as true, the Superior Court concluded that Vanterpool failed to prove that the oral modifications to the original contracts were authorized. The Superior Court also rejected Vanterpool's alternate argument that he could recover under a quantum meruit or unjust enrichment theory, relying on prior decisions of the District Court and the United States Court of Appeals for the Third Circuit. Thus, the Superior Court denied Vanterpool's motion for summary judgment, and granted the Government's cross-motion for summary judgment.

Despite the Superior Court having issued a seemingly final decision resolving the case on July 12, 2013, Judge Mackay nevertheless entered an order on August 2, 2013, recusing herself from the case because she had represented Vanterpool when she was in private practice. In that order, Judge Mackay further stated that she "did not author nor participate in the memorandum opinion or order entered on July 1[2], 2013, nor did she have any knowledge of them until after they were entered." (J.A. 556.) Three days later, on August 5, 2013, Vanterpool filed two motions. One, captioned as a "Motion to Vacate," requested that the July 12, 2013 opinion be vacated as a void judgment because, despite her denial of authorship, the "Hon. Michael C. Dunston for the Hon. Kathleen Mackay" signature block could only be interpreted as the opinion having been authorized by Judge Mackay, and that in any event Judge Dunston would have lacked jurisdiction to enter an order in a case that was not

570

assigned to him. The second motion, captioned as a "Motion for Reconsideration," challenged the Superior Court's application of District Court Rule 56.1, as well as its interpretation of various provisions of the Virgin Islands Code in rejecting Vanterpool's quantum meruit claim.

On August 7, 2013, the case was formally assigned to Judge Dunston, who then issued two separate opinions on September 4, 2013. The first opinion, which denied Vanterpool's "Motion for Reconsideration," defended the use and application of District Court Rule 56.1 to treat the Government's statement of facts as undisputed without ever considering any contrary evidence in the record. The Superior Court also defended its interpretation of the pertinent Virgin Islands Code provisions, again emphasizing that it was following District Court and Third Circuit precedent.

The second September 4, 2013 opinion denied the "Motion to Vacate." In that opinion, Judge Dunston explained that there had been a gap between Judge Hollar's last day on the bench and Judge Mackay's first day, and that during this period he ruled on motions in such cases using the "Hon. Michael C. Dunston for the Hon. Kathleen Mackay" signature block. Judge Dunston stated that this signature block was used to "signify" that those cases should be assigned to Judge Mackay once she assumed her duties. He further characterized any claim that he lacked the authority to rule on the summary judgment motions as "specious." Vanterpool timely filed his notice of appeal with this Court on September 4, 2013. See V.I.S.Ct.R. 5(a)(1) ("In a civil case . . . if the Government of the Virgin Islands or the United States of America or an officer or agency thereof is a party, the notice of appeal may be filed by any party within 60 days after such entry [of judgment].").

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees [and] final orders of the Superior Court." V.I. CODE ANN. tit. 4, § 32(a). Because the September 4, 2013 opinions resolved all issues between the parties, they constitute final appealable judgments under section 32(a). *Ottley v. Estate of Bell*, 61 V.I. 480, 487 (V.I. 2014) (citing *Allen v. HOVENSA, L.L.C.*, 59 V.I. 430, 434 (V.I. 2013)).

The standard of review for this Court's examination of the Superior Court's application of law is plenary, while the Superior Court's findings of fact are reviewed for clear error. *Blyden v. People*, 53 V.I. 637, 646 (V.I. 2010).

## B. Judge Dunston's Authority

Although Vanterpool included a copy of the "Motion to Vacate" in the Joint Appendix, his appellate brief did not renew his argument that Judge Dunston lacked authority to issue orders in a case that had been duly assigned to another judge. Nevertheless, at oral argument, Vanterpool, through his counsel, stated that he does not wish to abandon his claim that Judge Dunston should not have ruled on the summary judgment motion.

██ Ordinarily, an appellant's failure to raise an issue in an appellate brief renders it waived on appeal. V.I.S.CT.R. 22(m) ("Issues that were . . . raised or objected to but not briefed . . . are deemed waived for purposes of appeal."). We note 'that Vanterpool frames his argument in jurisdictional terms by claiming that the July 12, 2013 opinion constituted a nullity, a characterization typically reserved only for orders entered without jurisdiction. *In re Guardianship of Smith*, 54 V.I. 517, 531 (V.I. 2010). This characterization is not without support, for several courts in other jurisdictions have held that a judge acts without subject-matter jurisdiction when he issues an order in a case that was duly assigned to a different judge, and that the resulting order is a nullity without legal effect. *See, e.g., Neal v. Wilson*, 321 Ark. 70, 900 S.W.2d 177, 179-80 (1995); *People v. Madrigal*, 37 Cal. App. 4th 791, 43 Cal. Rptr. 2d 498, 500-01 (1995); *Ksiezyk v. City of Cleveland*, No. 78881, 2001 Ohio App. LEXIS 5417, *6-8 (Ohio Ct. App. Dec. 6, 2001) (unpublished). Were we to agree, we would be required to consider this argument even though Vanterpool did not assert it in his appellate brief. *See V.I. Waste Mgmt. Auth. v. Bovoni Invs., LLC*, 61 V.I. 355, 363 (V.I. 2014) (holding that the Supreme Court may review the Superior Court's jurisdictional determinations *sua sponte*) (citing *Smith*, 54 V.I. at 527).

██ We are not persuaded that the error Vanterpool has identified is jurisdictional in nature. The phrase "jurisdictional" refers to "a *court's* adjudicatory capacity." *First Am. Dev. Group/Carib, LLC v. WestLB AG*, 55 V.I. 594, 611 (V.I. 2011) (emphasis added). Under Virgin Islands law, the judicial power of the Territory is clearly vested in courts, and not to individual judges. 4 V.I.C. § 2 ("The judicial power of the Territory is

vested . . . in courts of local jurisdiction to be designated the 'Superior Court of the Virgin Islands' and the court of last resort . . . 'The Supreme Court of the Virgin Islands.' ").[3] Similarly, the statute conferring the Superior Court with original jurisdiction over all civil actions omits any reference to vesting jurisdiction to particular judicial officers. 4 V.I.C. § 76(a) ("[T]he Superior Court shall have original jurisdiction in all civil actions regardless of the amount in controversy . . . .").

This is consistent with how other United States jurisdictions view the exercise of judicial power. *See, e.g., Carter v. Jones*, 967 So. 2d 615, 621 (La. Ct. App. 2007) (holding that statute granting jurisdiction to a "district court" does not vest jurisdiction "to the smaller segments of that court's internal structure, including its judges."); *People v. Gray*, 363 Ill. App. 3d 897, 845 N.E.2d 113, 116, 300 Ill. Dec. 692 (2006) ("We agree that jurisdiction is vested in courts, not in individual judges."); *Peoples State Bank ex rel. Madison Nat'l Bank v. Becker*, No. 227121, 2002 WL 1797246, at *5 (Mich. Ct. App. Aug. 2, 2002) (unpublished) ("[The statute] confers jurisdiction upon courts, not individual judges."). Notably, one of the states that has characterized a decision rendered by a non-assigned judge as a jurisdictional defect has nevertheless held that a judge other than the assigned judge may issue a ruling if the assigned judge is unavailable and time is of the essence, *see Rosenberg v. Gattarello*, 49 Ohio App. 2d 87, 359 N.E.2d 467, 471 (1976), thus indicating that the error may not actually have any jurisdictional significance. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 511, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006) (recognizing the existence of "drive-by jurisdictional rulings" in which legal rules are erroneously labeled "jurisdictional" through "unrefined dispositions").

---

[3] Like 48 U.S.C. § 1611(a), section 2 continues to provide that, in addition to the Superior Court and Supreme Court, "[t]he judicial power of the Territory is vested in a court . . . designated the 'District Court of the Virgin Islands.' " 4 V.I.C. § 2; *see* 48 U.S.C. § 1611(a) ("The judicial power of the Virgin Islands shall be vested in a court of record designated the 'District Court of the Virgin Islands.' "). But as we recently explained, the language in section 1611(a) was superseded by subsequent amendments to the Revised Organic Act, and "the District Court no longer exercises the judicial power of the Virgin Islands." *Hodge v. Bluebeard's Castle, Inc.*, 62 V.I. 671, 683 n.6 (V.I. 2015) (citing *Edwards v. HOVENSA, LLC*, 497 F.3d 355, 359-61, 49 V.I. 1133 (3d Cir. 2007)). This remains so despite the language appearing in 4 V.I.C. § 2, since the Virgin Islands Legislature cannot expand the authority of the District Court of the Virgin Islands beyond that provided by Congress. *Bryan v. Fawkes*, 61 V.I. 201, 220 (V.I. 2014).

■ Nevertheless, we conclude that Vanterpool's claim is properly before us pursuant to other exceptions to the waiver rule. The issue of Judge Dunston's authority to rule on a case assigned to Judge Mackay was "fairly presented to the Superior Court," V.I.S.Cт.R. 4(h), in that the claim was briefed by both parties and resolved on the merits in the first September 4, 2013 opinion. Additionally, "the Supreme Court, at its option, may notice an error not presented that affects substantial rights." V.I.S.Cт.R. 22(m). Although it does not constitute a jurisdictional defect, courts have characterized claims that a particular judge or other individual lacked authority to issue dispositive rulings in a case as "affecting substantial rights" since they "involv[e] a fundamental question of judicial authority." *State v. Irby*, 848 N.W.2d 515, 518 (Minn. 2014) (quoting *State v. Harris*, 667 N.W.2d 911, 920 (Minn. 2003)); *accord, In re Guardianship of Hughes*, 2013 Cal. App. Unpub. LEXIS 1643, *34 (Cal. Ct. App. 2013) (unpublished) ("[A] litigant's constitutional rights are violated where the trial court improperly delegates its judicial authority.") (citing *Aetna Life Ins. Co. v. Superior Court*, 182 Cal. App. 3d 431, 227 Cal. Rptr. 460 (1986)).

■ Under Virgin Islands statutory law, it is the responsibility of the Presiding Judge of the Superior Court to "divide the business and assign the cases among all the judges of the court in such manner as will secure the prompt dispatch of the business of the court." 4 V.I.C. § 72b(a). No provision of the Virgin Islands Code permits the Presiding Judge to delegate this statutory assignment power to a different judge,[4] nor do the applicable statutes authorize one Superior Court judge to essentially ignore the Presiding Judge's assignment by issuing an order in a case assigned to another judge.

■ Based on these authorities, we conclude that Judge Dunston exceeded his authority by issuing the July 12, 2013 opinion despite the fact that the case remained assigned to Judge Mackay. Although, in his September 4, 2014 opinion denying Vanterpool's "Motion to Vacate," Judge Dunston stated that the matter had not been assigned to any judge

---

[4] In reaching this decision, we emphasize that the Presiding Judge may delegate the enforcement of a case assignment policy to other individuals, such as by directing the Clerk's Office to assign new cases at random, or pursuant to a predetermined rotation system. However, once a case has actually been assigned to a judicial officer, no individual other than the assigned judicial officer (through recusal) or the Presiding Judge (through exercise of the statutory reassignment power) may interfere with that assignment.

at the time he issued the July 12, 2013 opinion because Judge Mackay was still serving in the Magistrate Division and had yet to assume her duties as a Superior Court judge, the certified docket sheet maintained by the Clerk of the Superior Court reflects that the case was formally reassigned to Judge Mackay four days earlier on July 8, 2013. Significantly, in this case there is no indication that Judge Mackay was ill or otherwise unavailable, or that the summary judgment motions were emergency matters that required immediate action. *Rosenberg*, 359 N.E.2d at 471.

■ Nevertheless, while Judge Dunston lacked the authority to issue a dispositive order in a case that was assigned to another judge, this action, standing alone, does not compel reversal. When a trial judge takes actions that exceed the scope of his authority because authority was vested in another judge, "the decision to deny those proceedings legal effect 'is grounded not in metaphysical notions regarding transfer of power, but on practical considerations concerning efficient judicial administration.'" *Hansen v. O'Reilly*, 62 V.I. 494, 510 (V.I. 2015) (quoting *Harvey v. Christopher*, 55 V.I. 565, 569 n.2 (V.I. 2011)). While this case was assigned to Judge Mackay when Judge Dunston issued the July 12, 2013 opinion, the record reflects that the case was formally reassigned to Judge Dunston on August 7, 2013, five days after Judge Mackay issued her August 2, 2013 recusal order. Consequently, were we to agree with Vanterpool that the July 12, 2013 opinion is a nullity and remand the case, it would simply return to Judge Dunston. Thus, remanding for the Superior Court to "issue a new decision . . . would serve absolutely no purpose other than [to impose] additional expense and delay," since the same judge would be asked to make the same legal determination based on the same evidence and arguments. *Hansen*, 62 V.I. at 510-511. Thus, while we would ordinarily be required to vacate the July 12, 2013 opinion and order and remand for the judge assigned to the case to consider and decide the dispositive motion, we decline to do so here in the interest of judicial economy. *Id.* at 511 (collecting cases).

## C. District Court Rule 56.1

Vanterpool, as his first issue on appeal, asserts that the Superior Court should not have "rigidly applied" District Court Rule 56.1. (Appellant's Br. 8.) In its appellate brief, the Government contends that Vanterpool failed to comply with District Court Rule 56.1 "at his peril" and that

condoning his defective filing would "plac[e] the onus on the [Superior] Court to determine what he could possibly be able to offer to defeat summary judgment." (Appellee's Br. 20-21.)

■ Before addressing this issue on the merits, we are troubled by the fact that neither Vanterpool nor the Government explain in their appellate briefs why they believe District Court Rule 56.1 — a rule promulgated by the United States District Court of the Virgin Islands to govern proceedings in that court — is in any way applicable to this case. Perhaps even more troubling is that the Superior Court, in its July 12, 2013 opinion, also provided no such explanation, but instead simply cited to District Court Rule 56.1 mechanically and without explanation. Such uncritical application of the rules of another court to a proceeding in the Superior Court is wholly inconsistent with our admonition that "the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure, and the Local Rules of the District Court should represent rules of last resort rather than first resort, and should be invoked only when a thorough review of applicable Virgin Islands statutes, Superior Court rules, and precedents from this Court reveals the absence of any other [applicable] procedure." *Sweeney v. Ombres*, 60 V.I. 438, 442 (V.I. 2014). ·

■ Although the parties and the Superior Court have essentially stipulated to the application of District Court Rule 56.1 to this matter, "[t]his Court has repeatedly cautioned that parties may not, through explicit agreement or implicitly by omission, stipulate to the law." *Simmonds v. People*, 59 V.I. 480, 493 (V.I. 2013) (collecting cases). Consequently, this Court possesses an obligation independently to determine which court rules actually apply to the underlying proceeding even if the parties mistakenly believe that they have identified the correct rules. *See Phillips v. People*, 51 V.I. 258, 272-73 (V.I. 2009) (determining, *sua sponte*, that the Uniform Rules of Evidence, rather than the Federal Rules of Evidence, applied to the underlying case); *Gov't of the V.I. v. Durant*, 49 V.I. 366, 371-72 (V.I. 2008) (holding, *sua sponte*, that substantive aspects of Federal Rule of Criminal Procedure 12.2(c)(1)(A) were not applicable to Superior Court proceedings).

Here, it is almost certain that the parties and the Superior Court believe that District Court Rule 56.1 was applicable to this case through Superior Court Rule 7, even though Rule 7 is not cited in the parties' briefs or the July 12, 2013 opinion. Rule 7 reads, in its entirety, that

[t]he practice and procedure in the Superior Court shall be governed by the Rules of the Superior Court and, to the extent not inconsistent therewith, by the Rules of the District Court, the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure and the Federal Rules of Evidence.

SUPER. CT. R. 7. Superior Court Rule 7 traces its origins to a predecessor rule adopted by the District Court for the Superior Court during the period in which the District Court possessed both appellate jurisdiction over the Superior Court and the authority to promulgate rules for the Superior Court.[5] *Gov't of the V.I. v. Semc Corp.*, 6 V.I. 621, 627 (V.I. Super. Ct. 1967).

As we have previously explained, under the 1984 amendments to the Revised Organic Act of 1954, Congress granted the Virgin Islands Judiciary the authority to promulgate rules governing practice and procedure. *Corraspe v. People*, 53 V.I. 470, 482 n.2 (V.I. 2010); *see also In re Application of Moorhead*, 27 V.I. 74, 81-82 (V.I. Super. Ct. 1992) (explaining that Congress, in enacting section 21(c) of the Revised Organic Act through the 1984 amendments, intended to divest the District Court of its rulemaking authority over the Superior Court). The Superior Court, as the sole local court at that time, exercised that power for the first time in 1994, in order to cover the expanded criminal jurisdiction that went into effect on January 1, 1994, as well as to govern the Virgin Islands Bar. *See id.*; *see also* PREFACE TO THE FIRST GEN. AMENDMENTS TO THE RULES OF THE SUPERIOR CT. OF THE U.S. VIRGIN ISLANDS (1994) ("[T]he Court's expanded jurisdiction and its added responsibility to regulate the admission and disciplining of members of the Bar required a

---

[5] At the time the District Court promulgated the predecessor to Superior Court Rule 7, the Superior Court was known as the Municipal Court and was a court of limited jurisdiction. *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967, 978 n.6 (V.I. 2011). The Legislature created two Municipal Courts in 1957, one for St. Croix and the other for St. Thomas-St. John, replacing the three Police Courts that had existed since 1921. *Homer v. Lorillard*, 6 V.I. 558, 567 (V.I. Super. Ct. 1967). The two Municipal Courts were consolidated into a single court in 1965, *id.*, and later renamed the Territorial Court in 1976. 1976 Sess. Laws 197 (Act No. 3876, § 5). Finally, in 2004, the Legislature again redesignated the court as the Superior Court of the Virgin Islands. 2004 V.I. Sess. Laws 179 (Act No. 6687, § 1(b)). That court has been the Territory's court of general jurisdiction in both civil and criminal cases since 1994. *Hodge v. Bluebeard's Castle, Inc.*, 62 V.I. 671, 677-78 (V.I. 2015). We nevertheless refer to the former Municipal Court and Territorial Court by its current name to avoid confusion.

comprehensive revision of the rules consistent therewith."). Nevertheless, the Superior Court retained Superior Court Rule 7 in largely the same form in order to allow for Superior Court practice to "be as consistent as possible with the rules of the District Court of the Virgin Islands for the convenience of the members of the V.I. Bar." *Id.*

Since then, this Court has questioned the validity of Superior Court Rule 7 under section 21(c) of the Revised Organic Act. The United States Court of Appeals for the Third Circuit first recognized the possibility of a facial challenge to the validity of Superior Court Rule 7 in *In re Richards*, 213 F.3d 773, 786, 42 V.I. 469 (3d Cir. 2000), a case decided during the period when the Superior Court served as the only local court in the Virgin Islands Judicial Branch. The Third Circuit did not then address the validity of Superior Court Rule 7 because it was able to resolve the case on other grounds, but it did reaffirm the fact that "[a]ny authority the federal rules have over territorial courts is a function of territorial law that must be consistent with the [Revised Organic Act]," and that "[a]lthough the [Superior] Court may adopt whatever rules it chooses, those rules must still comport with the [Revised Organic Act]." *Id.* at 784 n.4.

On January 29, 2007, this Court assumed its role as the court of last resort in the Virgin Islands, *Hodge v. Bluebeard's Castle, Inc.*, 62 V.I. 671, 677-78 (V.I. 2015), and now exercises "general oversight of the judicial branch of the Government of the Virgin Islands." 4 V.I.C. § 31(d)(3). In that capacity, this Court has questioned whether Superior Court Rule 7 comports with the Revised Organic Act's requirement that the court rules employed in proceedings before Virgin Islands courts actually be promulgated by the Virgin Islands Judiciary:

> On its face, this rule appears to incorporate the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure, the Local Rules of Civil Procedure, and the Local Rules of Criminal Procedure into Superior Court proceedings as promulgated and amended by the United States Supreme Court and the United States District Court of the Virgin Islands. While apparently intended to make local and federal practice as similar as possible, *Gov't of the V.I. v. Thomas*, 32 V.I. 64, 66-68 (V.I. Super. Ct. 1995), the wholesale adoption by reference of four sets of rules promulgated by courts outside of the Virgin Islands Judiciary to govern proceedings in the Superior Court may be prob-

lematic given that Congress provided in section 21(c) of the Revised Organic Act that "[t]he rules governing the practice and procedure of the courts established by local law . . . shall be governed by local law or *the rules promulgated by those courts*."[6]

*Percival v. People*, 62 V.I. 477, 486 n.1 (V.I. 2015) (quoting 48 U.S.C. § 1611(c)) (emphasis in original); *see also Estick v. People*, 62 V.I. 604, 619 n.7 (V.I. 2015) (questioning Superior Court Rule 7's validity, but noting that "regardless of the validity of Superior Court Rule 7, this Court's holdings in [prior cases] addressing a defendant's duty to provide notice of an alibi witness to the People when requested remain controlling authority until this Court sets those rulings aside"); *People v. Velasquez*, 62 V.I. 3, 15 (V.I. Super. Ct. 2014) (observing that reliance on Superior Court Rule 7 to incorporate federal rules is problematic, in that repeal of a federal rule — as was the case with District Court rule governing waiver of the right to a jury trial — may have unexpected and immediate negative consequences in Superior Court proceedings). In making these observations, we referenced our prior decisions holding that "mechanistic and uncritical reliance on the Restatements" pursuant to former 1 V.I.C. § 4 "has the effect of inappropriately

---

[6] We must also note that while Rule 7 was intended to make practice in Virgin Islands courts less complex, the practical application of Rule 7 requires litigants to be intimately familiar with the Superior Court Rules, the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure, the Local Rules of Civil Procedure, the Local Rules of Criminal Procedure, and every provision of the Virgin Islands Code dealing with judicial proceedings in order to know when a federal rule or District Court rule is not "inconsistent" with a Superior Court Rule or local statute, and therefore applies to Superior Court proceedings. The sheer volume of case law from this Court, the Superior Court, the Appellate Division of the District Court, and the Third Circuit attempting to figure out which rule applies speaks to the complications inherent in Rule 7, and underscores the fact that Rule 7 has done exactly the opposite of what it was intended to do. *See, e.g., Estick v. People*, 62 V.I. 604, 619 n.7 (V.I. 2015); *Bryan v. Fawkes*, 61 V.I. 201, 239 n.30 (V.I. 2014); *Sweeney*, 60 V.I. at 442-43; *Joseph v. People*, 60 V.I. 338, 344-50 (V.I. 2013); *Fuller v. Browne*, 59 V.I. 948, 953-56 (V.I. 2013); *Benjamin v. People*, 59 V.I. 572, 576 (V.I. 2013); *DeGroot v. People*, S. Ct. Civ. No. 2008-0107, 2013 V.I. Supreme LEXIS 16, *5 n.1 (V.I. Apr. 29, 2013) (unpublished); *Chciuk-Davis v. People*, 57 V.I. 317, 324-25 (V.I. 2012); *Santiago v. V.I. Housing Auth.*, 57 V.I. 256, 275-78 (V.I. 2012); *Tindell v. People*, 56 V.I. 138, 149-50 (V.I. 2012); *Terrell v. Coral World*, 55 V.I. 580, 590-91 & n.12 (V.I. 2011); *Blyden v. People*, 53 V.I. 637, 659 (V.I. 2010); *Corraspe*, 53 V.I. at 482; *Phillips v. People*, 51 V.I. 258, 273-76 (V.I. 2009); *Gov't of the V.I. v. Durant*, 49 V.I. 366, 373-74 (V.I. 2008); *People v. Velasquez*, 62 V.I. 3, 14-15 (V.I. Super. Ct. 2014); *Bertrand v. Cordiner Enters.*, 55 V.I. 247, 254-57 (V.I. Super. Ct. 2011); *In re Richards*, 213 F.3d 773, 786, 42 V.I. 469 (3d Cir. 2000); *Gov't of the V.I. v. Greenidge*, 41 V.I. 200, 208 n.5 (D.V.I. App. Div. 1998).

delegating the judicial power of the Virgin Islands to the American Law Institute and to the governments of other jurisdictions." *Gov't of the V.I. v. Connor*, 60 V.I. 597, 602 (V.I. 2014) (citing *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967, 980 (V.I. 2011)); *see also Dunn v. HOVIC*, 1 F.3d 1371, 1392, 28 V.I. 467 (3d Cir. 1993) (Alito, J., concurring) ("I do not interpret 1 V.I.C. § 4 to mean that the Restatements . . . are tantamount to Virgin Islands statutes. . . . 1 V.I.C. § 4 does not incorporate all of the Restatement provisions . . . as if they were actual statutory text; nor does it delegate to the American Law Institute the authority to enact changes in the law of the Virgin Islands in all of the areas covered by the Restatements.").

Both this Court and the Superior Court have made similar observations in the related context of whether Act No. 7161 — in which the Legislature adopted "the Federal Rules of Evidence, Pub. L. [No.] 93-595, § 1, January 2, 1975, 88 Stat. 1926, and all subsequent amendments thereto," 2010 V.I. Sess. Laws 50 (Act No. 7161, § 15(b)) — only adopted the Federal Rules of Evidence as they existed when Act No. 7161 became law on April 7, 2010, or as later amended after this date as well. *See Bovoni Invs., LLC*, 61 V.I. at 368 n.13 ("[S]ince every provision of the Federal Rules of Evidence is just as much a part of Virgin Islands law as any other enactment passed by the Legislature and approved by the Governor, the resolution of this question depends on whether the Legislature may delegate its authority to adopt provisions of Virgin Islands law to another body — in this case Congress and the United States Supreme Court — when lawmaking authority is vested exclusively in the Legislature by the Revised Organic Act of 1954.") (internal quotation marks and citations omitted); *People v. Ventura*, Super. Ct. Crim. No. 76/2012 (STX), 2014 V.I. LEXIS 53, *24 n.4 (V.I. Super. Ct. July 25, 2014) (unpublished) ("[C]onstruing Act 7161 to have anticipated any subsequent amendments to the Federal Rules of Evidence after April 7, 2010 . . . requires finding that the Legislature intended to delegate its authority for promulgating ' laws in the Virgin Islands to the agencies and branches of the federal government tasked with considering, revising, adopting, and approving changes to the federal rules of evidence, *see* 28 U.S.C. §§ 2702-04, a form of *laissez-faire* legislating the Supreme Court of the Virgin Islands has resoundingly rejected.").

Neither this Court nor the Superior Court has resolved the delegation-of-power issue with respect to 1 V.I.C. § 4 or Act No. 7161, given that the Legislature implicitly repealed 1 V.I.C. § 4 in 2004, *see King v. Appleton*,

61 V.I. 339, 348-50 (V.I. 2014), and the pertinent amendments to the Federal Rules of Evidence after April 7, 2010, were stylistic rather than substantive, *see Bovoni Invs., LLC*, 61 V.I. at 368 n.13; *Ventura*, 2014 V.I. LEXIS 53, at *22 n.4. Nevertheless, all of these enactments raise serious delegation-of-power concerns, in that authority vested in one branch of the Virgin Islands Government by virtue of the Revised Organic Act of 1954 has been delegated, in its entirety, to other entities that are not a part of the Virgin Islands Government. *Accord, Dep't of Transp. v. Assoc. of Am. Railroads*, 135 S. Ct. 1225, 1237, 191 L. Ed. 2d 153 (2015) (Alito, J., concurring); *Mistretta v. United States*, 488 U.S. 361, 372, 109 S. Ct. 647, 102 L. Ed. 2d 714 (1989); *Brown v. Gerdes*, 321 U.S. 178, 183, 64 S. Ct. 487, 88 L. Ed. 659 (1944); *Carter v. Carter Coal Co.*, 298 U.S. 238, 311, 56 S. Ct. 855, 80 L. Ed. 1160 (1936); *J.W. Hampton, Jr. & Co. v. United States*, 276 U.S. 394, 407, 48 S. Ct. 348, 72 L. Ed. 624 (1928); *Marshall Field & Co. v. Clark*, 143 U.S. 649, 692, 12 S. Ct. 495, 36 L. Ed. 294 (1892); *Krielow v. Louisiana Dept. of Agriculture & Forestry*, 125 So. 3d 384, 398-97 (La. 2013); *cf. Gumbhir v. Kansas Bd. of Pharmacy*, 228 Kan. 579, 618 P.2d 837, 843 (1980) (holding that a statute mandating applicants for licensure as pharmacists to graduate from a school accredited by the American Council on Pharmaceutical Education held to be unconstitutional delegation of power from the Kansas government to a nongovernmental association); *Duson v. Poage*, 318 S.W.2d 89, 97 (Tex. Civ. App. 1958) (holding that a rule delegating power to determine qualifications of hospital staff to the American Medical Association to be invalid because "the American Medical Association may change its rules and they thus become the test of whether a physician is qualified for the staff"); *Ada v. Sablan*, No. 89-419, slip op. at 3 n.2 (N. Mar. I. Super. Ct. 1993) (holding that a statute requiring automatic application of the majority rule in all instances may violate "the right to self-government guaranteed to the people of the Commonwealth . . . because the legislatures of Virginia, California, etc., now decide, albeit indirectly, what the law should be in the Commonwealth.").

▮▮▮ Although we have reservations regarding the continued validity of Superior Court Rule 7 that we cannot simply ignore, especially in light of our prior observations in *Percival* and *Estick*, we need not resolve that issue as part of this case because District Court Rule 56.1 would be inapplicable to Superior Court proceedings even if Superior Court Rule 7 were valid. "[E]ven where it is applicable Rule 7 does not mandate

verbatim adoption of the practice and procedure of the District Court." *Gov't of the V.I. v. Quetel*, 18 V.I. 145, 149 (V.I. Super. Ct. 1982).[7]

▮▮ Here, it is clear that Vanterpool failed to comply with the requirements of District Court Rule 56.1. The Superior Court never considered, however, why District Court Rule 56.1 imposes these requirements. As we have previously emphasized, "the Local Rules of the District Court should represent rules of *last resort* rather than first resort." *Sweeney*, 60 V.I. at 442 (emphasis added). Consequently, the Superior Court should not have reflexively and mechanistically applied District Court Rule 56.1 through Superior Court Rule 7, but instead should have independently determined whether the rule served a valid purpose when applied to the Superior Court rather than to the District Court.[8] In fact, in a decision interpreting a prior version of District Court Rule 56.1, a different Superior Court judge held that, notwithstanding Superior Court

---

[7] To some extent this must be obvious; for example, Federal Rule of Criminal Procedure 1(b) defines "court" as "a federal judge performing functions authorized by law," but this definition cannot govern when a Federal Rule of Criminal Procedure is applied through Superior Court Rule 7. Similarly, explicit references to federal statutes that have not been extended to the Virgin Islands also must be disregarded. *Durant*, 49 V.I. at 375-76.

[8] Looking beyond the letter of District Court Rule 56.1 and into its purpose, it is clear that the enactment was modeled after a common rule adopted by more than 60 federal district courts, virtually all of which are also labelled as Rule 56.1. *See* Nathaniel S. Boyer, *The Tail Wagging the Dog: Local Summary Judgment Rules That Deem Facts Admitted*, 30 CARDOZO L. REV. 2223, 2236 n.93 (2009) (collecting rules). To the extent that adoption of many of these local rules has coincided with the implementation of CM/ECF — the federal judiciary's case management and electronic filing system — by federal district courts beginning in 2002, the system has been designed in a way to encourage submission of exhibits, proposed orders, and other supporting documents as separate attachments within a single docket entry. *See* UNITED STATES COURTS, *Court Records, Electronic Filing (CM/ECF)*, http://www.uscourts.gov/courtrecords/electronic-filing-cmecf/faqs-case-management-elect ronic-case-files-cmecf, *archived at* http://perma.cc/K5AX-UA9K; DISTRICT COURT OF THE VIRGIN ISLANDS, *CM/ECF Most Common Docketing Errors*, http://www.vid.uscourts.gov/ sites/vid/files/dc_ecf_10_common_ecf_errors.pdf, *archived at* http://perma.cc/UTZ8-EJNF (identifying the failure to upload supporting documents as separate documents attached to a single docket entry as a common error). "For each case filed in the [CM/ECF] system, a table appears which organizes the case documents and orders, among other things, in an organized manner." *Vargas Torres v. Toledo*, 672 F. Supp. 2d 261, 263 n.2 (D.P.R. 2009). Therefore, while District Court Rule 56.1's separate document requirement serves a useful function in the District Court, it serves no practical purpose in the Superior Court, given that the Superior Court does not use CM/ECF — or any electronic filing system for that matter — and instead only accepts paper copies of filings. Thus, there is no legitimate reason to extend District Court Rule 56.1 to proceedings in the Superior Court. *Citibank, N.A.*, 44 V.I. at 94.

Rule 7, District Court Rule 56.1 does not apply to proceedings in the Superior Court, because it merely established a filing requirement for which there was no basis to extend to the Superior Court. *Citibank, N.A. v. Chammah*, 44 V.I. 85, 93-94 (V.I. Super. Ct. 2001).[9]

 Significantly, the Superior Court's rigid application of District Court Rule 56.1 to this case is in clear conflict with prior precedent of this Court. *See Estick*, 62 V.I. at 619 n.7 ("[R]egardless of the validity of Superior Court Rule 7, this Court's holdings . . . remain controlling authority until this Court sets those rulings aside."). As we have previously held, federal rules such as District Court Rule 56.1 "should be invoked *only* when a thorough review of applicable Virgin Islands statutes, Superior Court rules, *and precedents from this Court* reveals the absence of any other [applicable] procedure." *Sweeney*, 60 V.I. at 442 (emphasis added). Although not cited by the Superior Court in either its July 12, 2013 or September 4, 2013 opinions, this Court has already held that the fact that a summary judgment motion is deemed uncontested due to a procedural defect — such as not filing a timely opposition — is not grounds for accepting the moving party's undisputed facts as true.[10] *Martin v. Martin*, 54 V.I. 379, 389 (V.I. 2010). Significantly, we held that "[t]he trial court may not accept as true the moving party's itemization of undisputed facts; instead, the court must satisfy itself that the evidence in the summary judgment records supports this relief." *Id.* Based on this holding — which must take precedence over the Superior Court's interpretation of District Court Rule 56.1, *see Estick*, 62 V.I. at 619 n.7;

---

[9] At the time of the *Citibank* decision, District Court Rule 56.1 prohibited a party from filing a summary judgment motion directly with the court, and instead required the party seeking summary judgment to send a copy of its motion to the other parties and to "file only the notice of motion with the Clerk." 44 V.I. at 93. The party moving for summary judgment was expected to await responses from the other parties, and then file the motion, opposition, and any other filings at the same time, along with a cover letter stating that the motion had been circulated to all the parties and was ready for submission to the court. *Id.* at 93-94.

[10] Effective December 1, 2010, Federal Rule of Civil Procedure 56 was rewritten substantially to incorporate some — but not all — aspects of local rules similar to District Court Rule 56.1. Nevertheless, this Court's *Martin* decision, which adopted the standard contained in a prior version of the rule, remains controlling in Virgin Islands courts. *Estick*, 62 V.I. at 619 n.7; *Sweeney*, 60 V.I. at 442 ("[T]he Federal Rules of Civil Procedure . . . should represent rules of last resort rather than first resort, and should be invoked only when a thorough review of applicable Virgin Islands statutes, Superior Court rules, and *precedents from this Court* reveals the absence of any other [applicable] procedure." (emphasis added)).

*Sweeney*, 60 V.I. at 442[11] — it was clearly error for the Superior Court to disregard the record and treat the facts set forth in the Government's cross-motion for summary judgment as uncontested simply because Vanterpool's summary judgment motion failed to include a serially-numbered separate statement of undisputed facts. Accordingly, the Superior Court erred when it applied District Court Rule 56.1 to this proceeding, and used Vanterpool's non-compliance with that provision as the basis for treating the Government's statement of facts as undisputed.[12]

## D. The Merits

 When reviewing a summary judgment decision on appeal, this Court applies the same test that the Superior Court should have applied. *Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373, 379-80 (V.I. 2014). Consequently, this Court, in its early cases, often overlooked errors made by the Superior Court in the interest of judicial economy, and proceeded to perform a correct summary judgment analysis for the first time on appeal rather than remanding the matter to the Superior Court. *See, e.g., United Corp. v. Tutu Park Ltd.*, 55 V.I. 702, 708 n.3 (V.I. 2011); *Martin*, 54 V.I. at 385; *Hodge·v. McGowan*, 50 V.I. 296, 310-11 (V.I. 2008). However, in more recent cases, barring exceptional circumstances, we have declined to do such an analysis on appeal — notwithstanding the fact that on appeal this Court would accord no deference to the Superior Court's analysis — and instead have remanded the case to the Superior Court so that it could address the question in the first instance. *See, e.g., Connor*, 60 V.I. at 604; *Browne v. Gore*, 57 V.I. 445, 453 n.5 (V.I. 2012). In these later cases, we have emphasized that "independent decisions of [the Superior Court] will improve the quality of [our] decisions" and that addressing questions of law — such as whether summary judgment should be granted — for the first time on appeal is inconsistent with the hierarchical system of judicial decision-making. *Connor*, 60 V.I. at 604

---

[11] *See State v. DeJesus*, 288 Conn. 418, 953 A.2d 45, 59 (2009) (recognizing the inherent power of a jurisdiction's court of last resort to "develop and change [the] rules of evidence on a case-by-case basis").

[12] As noted above, in holding that the Superior Court erred when it applied District Court Rule 56.1 to this case, we do not reach the question of whether Superior Court Rule 7 represents an unlawful delegation of power to the United States District Court and other entities outside of the Virgin Islands Judiciary. *See Percival*, 62 V.I. at 486 n.1; *accord Frett v. People*, 58 V.I. 492, 504 n.11 (V.I. 2013).

(quoting Lewis A. Kornhauser, *Adjudication by a Resource-Constrained Team: Hierarchy and Precedent in a Judicial System*, 68 S. CAL. L. REV. 1605, 1626 (1995)); *accord, In re Suspension of Welcome*, 58 V.I. 236, 259 (V.I. 2013) ("[W]hile we possess the power to completely disregard the EGC's findings, we do not believe that it would be desirable to do so. Although we do not defer to its recommended sanction, this Court clearly benefits from the EGC's input.").

■ Unlike *United Corp.*, *Martin*, and *Hodge*, where the Superior Court actually conducted a summary judgment analysis but potentially made other errors of law — such as issuing a ruling *sua sponte*, or before considering a recusal motion — in this case the Superior Court, as in *Connor* and *Browne*, conducted no analysis at all. While the Superior Court purported to do a summary judgment analysis, it repeatedly emphasized that it did not look at the record, but instead treated the Government's statement of facts as true without independently verifying whether any of those facts were disputed or even had an evidentiary basis at all. For example, in one part of the July 12, 2013 opinion, the Superior Court made the following holding:

> Given that the Governor and the Commissioner of Property and Procurement signed the contracts, either would constitute the "Contracting Officer." As [Vanterpool] has not submitted a Statement of Undisputed Material Facts, there is no evidence properly before the Court indicating that: (1) the Commissioner of Education is an authorized representative of the Governor or the Commissioner of Property and Procurement under the contracts; (2) the Contracting Officer issued a change order under Section 3(b); (3) [Vanterpool] gave the Contracting Officer written notice stating the date, circumstance, and source of the change order, regarded the order as a change order, and submitted the notice within 20 days of when the costs were incurred; (4) [Vanterpool] submitted to the Contracting Officer a written statement within 30 days of a written notice that set forth the general nature and monetary extent of his claim for an equitable adjustment; or (5) [Vanterpool] sought an equitable adjustment before final payment under the contracts was made.

(J.A. 541.) Moreover, in its September 4, 2013 opinion denying Vanterpool's "Motion for Reconsideration," the Superior Court expressly stated that, although it had cited to some portions of the record in its July 12,

585

2013 opinion, it had "grant[ed] summary judgment in favor of [the Government] based on the application of LRCi 56.1(d)."

Thus, rather than conducting our own review of the record for the first time on appeal to determine whether summary judgment was warranted, we will remand to the Superior Court so that it may perform a proper summary judgment analysis in the first instance. *Connor*, 60 V.I. at 604; *Browne*, 57 V.I. at 453 n.5; *accord, Pedro v. Ranger Am. of the V.I., Inc.*, 63 V.I. 511, 521 n.6 (V.I. 2015) ("[T]his Court is one of review, not first instance."). Nevertheless, in light of the fact that more than 10 years have passed since Vanterpool first filed his complaint in the Superior Court, with much of the delay attributable to the Superior Court's failure to rule on dispositive motions in a timely manner, *see Rennie v. Hess Oil V.I. Corp.*, 62 V.I. 529, 539 (V.I. 2015), we will, in the interests of judicial economy, address two pure questions of law that do not require us to comb through the voluminous evidentiary record: (1) what statutory requirements are waived by a public exigency contract, and (2) whether the Government may be sued for quantum meruit.

### 1. *Public Exigency Contracts*

Title 31, section 236 of Virgin Islands Code provides, in pertinent part, that

> [a]ll purchases of, and contracts for, supplies, materials, equipment, and contractual services, and all sales of personal property which has become obsolete and unusable, shall be based on competitive bids, except as provided in section 239 of this title. If the amount of the expenditure is estimated to exceed $50,000 or the amount of the sale if estimated to exceed $50,000 the contract shall be in writing.

31 V.I.C. § 236(a). Section 239, however, establishes that

> Supplies, material and equipment may be purchased and contractual services negotiated for, in the open market without observing the provisions of section 236 of this title provided —
>
> . . . .
>
> there exists a threat to public health, safety or welfare under emergency conditions as defined in regulations prescribed by the Commissioner; provided, that such emergency procurements shall be made

586

with such competition as is maximally practicable under the circum-
stances; and provided further, that all procurements made pursuant to
this item shall be clearly stamped "PUBLIC EXIGENCY".

31 V.I.C. § 239(a)(2). In its July 12, 2013 opinion, the Superior Court con-
cluded that section 239 of title 31 only eliminates the competitive bidding
requirement for public exigency contracts, but not the writing require-
ment.[13]

██ We agree. At first glance, it appears that section 239(a) supports
Vanterpool's position that a public exigency dispenses of the writing
requirement, in that it provides that a contract may be negotiated "without
observing the provisions of section 236." 31 V.I.C. § 239(a). However,
Vanterpool ignores the remainder of the section, which mandates "that all
procurements made pursuant to this item *shall be clearly stamped*
'PUBLIC EXIGENCY.' " 31 V.I.C. § 239(a)(2) (emphasis added).
Moreover, section 239(b) unquestionably contemplates that there be a
writing:

> Where an open market purchase is made, or a contract for services
> negotiated for, pursuant to clauses (1) and (2) of subsection (a) of this
> section, the approval of the Governor shall be necessary and, *in ad-
> dition, if the purchase is made pursuant to clause (2) of subsection (a)*
> of this section, the Commissioner of Property and Procurement *shall*

---

[13] In its opinion, the Superior Court also held that a contract labelled as a public-exigency
contract does not eliminate section 234's requirement that all purchase orders made by a
department or agency be approved by written order of the Commissioner of Property and
Procurement, implying that Vanterpool's contracts with the Government were purchase or-
ders. However, a "purchase order" is not the same as a "purchase," in that a "purchase" is
"[t]he act or an instance of buying," while a "purchase order" is "[a] document authorizing
a seller to deliver goods with payment to be made later." BLACK'S LAW DICTIONARY 1270
(8th ed. 2004) (emphasis added); *see also Olympic, Inc. v. Providence Wash. Ins. Co. of
Alaska*, 648 P.2d 1008, 1013 n.9 (Alaska 1982) (rejecting argument that a "purchase order"
can be a lease agreement); *Abbate v. Basser-Kaufman Management Corp.*, 32 Misc. 3d
1212(A), 930 N.Y.S.2d 173 (2011) (unpublished) (stating that a "purchase order . . . should
be used for goods and not services," and that a contract for flooring installation "should not
really be titled 'Purchase Order' "). Since the contracts between Vanterpool and the Gov-
ernment called for Vanterpool to make repairs to CAHS and the Muller School, we question
the Superior Court's application of section 234 to this case. Nevertheless, as we shall explain,
any error in this regard is harmless, since section 239 provides a role for the Commissioner
of Property and Procurement with respect to all purchases, rather than only purchase orders.

*attach to the requisition stamped "Public Exigency"* a brief but concise description of the nature of the public exigency involved.

31 V.I.C. § 239(b) (emphases added).

 The Virgin Islands Legislature has instructed that, when interpreting the Virgin Islands Code, "[w]ords and phrases shall be read with their context and shall be construed according to the common and approved usage of the English language." 1 V.I.C. § 42. Unquestionably, only a written document can be "stamped" with the phrase "Public Exigency." 31 V.I.C. § 239(a), (b). Moreover, in ordinary meaning, a "requisition" means an "act of formally requiring or calling upon someone to perform some action." *Perlera v. Vining Disposal Service, Inc.*, 47 Mass. App. Ct. 491, 713 N.E.2d 1017, 1022 n.11 (1999) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1929 (1993)); *see also North Haven Const. Co. v. Banton Constr. Co.*, No. CV990427298, 2008 Conn. Super. LEXIS 2053, *23 (Conn. Super. Ct. Aug. 7, 2008) (unpublished) (" 'Requisition' is commonly defined as 'a formal written request for something that is needed.' " (quoting AMERICAN HERITAGE DICTIONARY (2d College ed. 1985))). That the Commissioner of Property and Procurement is required by the governing Virgin Islands statutory provisions to "attach" a description of the public exigency is further evidence that the statute clearly contemplates that the requisition agreement between the Government and the vendor be in writing. To hold otherwise would impermissibly render that portion of the statute ineffective.[14] *Gilbert v. People*, 52 V.I. 350, 356 (V.I. 2009).[15]

---

[14] Because we decline to scour through the record to determine whether any disputed issues of material fact may exist so as to preclude summary judgment, our holding that section 239(b) requires that public-exigency contracts entered into pursuant to section 239(a)(2) be in writing should not be construed as an endorsement of the Superior Court's decision to grant the Government's cross-motion for summary judgment on Vanterpool's breach-of-contract claim. On remand, the Superior Court must independently examine the record to determine whether summary judgment is appropriate based on our interpretation of the pertinent statutes.

[15] In reaching this decision, we emphasize that the pertinent language of section 239(b) applies to public-exigency contracts as provided for in section 239(a)(2). However, we note that section 239(a)(4) exempts from the requirements of section 236 all contracts for "professional services; provided that such services shall be procured by competitive negotiation, wherever practical." 31 V.I.C. § 239(a)(4). Because Vanterpool has not asserted that his construction contracts are contracts for professional services under section 239(a)(4), we express

## 2. *Quantum Meruit*

██ In its July 12, 2013 opinion, the Superior Court also held that Vanterpool could not bring a claim for quantum meruit against the Government, relying exclusively on decisions of the Third Circuit and the District Court holding that the Government can never be sued for quantum meruit or unjust enrichment.[16] *See, e.g., Smith v. Dep't of Educ.*, 942 F.2d 199, 201-02, 27 V.I. 323 (3d Cir. 1991); *Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing*, 663 F.2d 419, 432 (3d Cir. 1981); *Sargeant v. Gov't of the V.I.*, 10 V.I. 245, 252-53 (D.V.I. 1973). In those cases, these federal courts held that 31 V.I.C. § 249(a), providing that "[a]ny purchase order or contract executed in violation of this chapter . . . shall be null and ineffective," had the effect of banning quantum meruit lawsuits against the Government.

First, we note that the Superior Court properly applied pre-2007 Third Circuit precedent on Virgin Islands law issued when that court sat as the *de facto* court of last resort for the Virgin Islands, as it was required to do under this Court's prior precedents. *Hamed v. Hamed*, 63 V.I. 529, 534 (V.I. 2015) (citing *In re People of the V.I.*, 51 V.I. 374, 389 n.9 (V.I. 2009)); *Defoe v. Phillip*, 56 V.I. 109, 118 (V.I. 2012). Nevertheless, we note that the decisions in *Smith* and *Heyl & Patterson* did not consider whether section 249(a) is consistent with the Revised Organic Act of 1954. Thus, while the Third Circuit's interpretation of section 249(a) is "entitled to great respect," *Defoe*, 56 V.I. at 120, we must conduct our own independent analysis to determine whether the statute should be interpreted in a way that would prohibit any and all quantum meruit claims against the Government.

██ The Revised Organic Act, which serves as the *de facto* constitution for the Virgin Islands, provides that "[t]he government of the Virgin Islands . . . shall have the right to sue by such name and *in cases arising*

---

no opinion as to whether a professional services contract is exempt from section 236's writing requirement.

[16] As we have previously explained, the terms "quantum meruit" and "unjust enrichment" refer to the same cause of action, which is available where there is no enforceable contract, but it is alleged that "the defendant 'receive[s] something of value to which he is not entitled and which he should restore' to the plaintiff." *Walters v. Walters*, 60 V.I. 768, 776 (V.I. 2014) (quoting *Maso v. Morales*, 57 V.I. 627, 635 n.9 (V.I. 2012)); *see also Cacciamani & Rover Corp. v. Banco Popular*, 61 V.I. 247, 252 (V.I. 2014) ("[A] claim for unjust enrichment cannot stand where an express contractual agreement exists between the parties.").

*out of contract, to be sued.*" 48 U.S.C. § 1541(b) (emphasis added). A cause of action for quantum meruit is one that sounds in contract. *Cacciamani & Rover Corp. v. Banco Popular*, 61 V.I. 247, 251 (V.I. 2014) ("Unjust enrichment is an equitable quasi-contract cause of action."); *see also Int'l Data Products Corp. v. United States*, 492 F.3d 1317, 1325 (Fed. Cir. 2007) ("A recovery in quantum meruit is based on an implied-in-law contract."). Importantly, numerous courts have interpreted similar "sue or be sued" clauses, as contained in the Revised Organic Act, as waiving immunity for quantum meruit claims. *See, e.g., Bor-Son Building Corp. v. Heller*, 572 F.2d 174, 178, 181 (8th Cir. 1978) ("sue and be sued" clause waived immunity from suit in claim for monetary relief based on quantum meruit, equitable lien, constructive trust, unjust enrichment, and joint venture); *Mar v. Kleppe*, 520 F.2d 867, 870 (10th Cir. 1975) ("sue and be sued" clause waived immunity of Administrator of Small Business Administration in suit for money damages for breach of contract and quantum meruit); *White v. Bloomberg*, 501 F.2d 1379, 1386 (4th Cir. 1974) ("sue and be sued" clause authorized suit against Postal Service for post-judgment interest). Since the Virgin Islands Legislature may not pass a statute that is inconsistent with the Revised Organic Act, *see Bryan v. Fawkes*, 61 V.I. 201, 230 (V.I. 2014) (citing *Limtiaco v. Camacho*, 549 U.S. 483, 489 n.2, 127 S. Ct. 1413, 167 L. Ed. 2d 212 (2007)), any interpretation of 31 V.I.C. § 249(a) that would completely prohibit any quantum meruit lawsuit against the Government based on a contract that failed to meet statutory formalities would raise serious questions about the statute's validity.

In any case, we need not determine whether the Government may permissibly insulate itself from quantum meruit lawsuits because section 249(a) offers no such protection. In their decisions construing section 249(a) as prohibiting quantum meruit claims against the Government, the Third Circuit and the District Court heavily emphasized that allowing a quantum meruit claim would undermine the powers of the executive and legislative branches by potentially allowing lower-level government officials to enter into quasi-contracts without proper approval. *Smith*, 942 F.2d at 202; *Sargeant*, 10 V.I. at 253. But in addition to not fully considering the waiver of immunity for cases arising in contract codified at 48 U.S.C. § 1541(b), these courts overlooked the fact that these same policy considerations apply to claims against the federal government — and potentially more so, given the proliferation of federal agencies with

contracting authority. Yet the United States Court of Appeals for the Federal Circuit — the federal appeals court vested with jurisdiction to hear appeals from the United States Court of Federal Claims, which hears monetary claims against the federal government — has repeatedly permitted quantum meruit claims to proceed against the United States. Significantly, the Federal Circuit, like the Court of Claims, has held that even when a contract between a contractor and the federal government is a "nullity" because the contract was entered into without statutory authorization, the contractor may in some cases recover under a quantum meruit theory:

> We start with the proposition that the failure of a contracting officer to comply with statutory requirements in making an award renders the contract a nullity. . . . Administrative actions taken in violation of statutory authorization or requirement are of no effect. As the board stated, a contractor "assumed the risk" that an agency "had actual authority to enter into the bargain to which the parties agreed." The courts are bound to strike down illegal contracts. Thus, no damages can be awarded for "breach" of a nullity.
>
> On the other hand, in many circumstances it would violate good conscience to impose upon the contractor *all* economic loss from having entered an illegal contract. Where a benefit has been conferred by the contractor on the government in the form of goods or services, which it accepted, a contractor may recover at least on a *quantum valebant* or *quantum meruit* basis for the value of the conforming goods or services received by the government prior to the rescission of the contract for invalidity. The contractor is not compensated *under* the contract, but rather under an implied-in-fact contract.

*United States v. Amdahl Corp.*, 786 F.2d 387, 392-93 (Fed. Cir. 1986) (emphasis in original) (citations omitted); *see also Prestex, Inc. v. United States*, 320 F.2d 367, 373 (Ct. Cl. 1963) ("Even though a contract be unenforceable against the Government, because [it was] not properly advertised, not authorized, or for some other reason, it is only fair and just that the Government pay for goods delivered or services rendered and accepted under it. . . . No one would deny that ordinary principles of equity and justice preclude the United States from retaining the services, materials, and benefits[,] and at the same time refusing to pay for them on the ground that the contracting officer's promise was unauthorized, or unenforceable for some other rea-

591

son."). This is consistent with how courts treat contracts between private parties that are determined to be null and void after one party has already received the benefit of the bargain. *See Cacciamani*, 61 V.I. at 251-52; *see also Fischer v. Estate of Flax*, 816 A.2d 1, 11 (D.C. 2003) (holding that quantum meruit recovery may lie if a contract is deemed to be a nullity).

■ Importantly, the existence of a quantum meruit action does not have the effect of reinstating the null-and-void contract, for damages are not measured pursuant to the contract. Instead, liability is imposed only to the extent that "fairness dictates that the plaintiff receive compensation for services provided." *Cacciamani*, 61 V.I. at 251 (internal quotation marks omitted). The Federal Circuit has reasoned that such a rule is necessary in government contracting because, while statutory procurement provisions must be honored, innocent contractors should not be punished for the failure of procurement officers to comply with the "maze of statutes and regulations" governing government contracts. *Amdahl Corp.*, 786 F.2d at 395 (quoting *Trilon Educ. Corp. v. United States*, 578 F.2d 1356, 1360 (Ct. Cl. 1979)). Of course, a quantum meruit recovery would be disallowed if the Government came forth with evidence that the contractor knew or should have known of the contract's illegality or contributed to the statutory procedures not being followed. *See Amdahl Corp.*, 786 F.2d at 395; *Prestex Inc.*, 320 F.2d at 373; *Schoenbrod v. United States*, 410 F.2d 400, 404 (Ct. Cl. 1969).

■ Given this substantial case law from the Federal Circuit — the appellate court with exclusive jurisdiction over appeals relating to government contracts — we conclude that section 249(a)'s reference to contracts that do not meet title 31's requirements as being "null and ineffective" should not be interpreted as a complete ban on quantum meruit claims. Federal law also provides that contracts that do not meet statutory requirements are nullities, yet the Federal Circuit has nevertheless permitted quantum meruit claims to proceed so that innocent contractors can be compensated for the services provided under those void contracts.

■ And while the Third Circuit arrived at its interpretation of section 249(a) by focusing on the unfairness in an official binding the Government to an agreement without authorization, we cannot ignore that the Legislature enacted chapter 23 of title 31 of the Virgin Islands Code with the purpose of establishing "an economic and efficient system for the procurement and supply of all property and non-personal services."

31 V.I.C. § 231. Were we to agree with the Superior Court and categorically deny Vanterpool any possibility of being compensated for the services performed for the Government's benefit, allegedly at the invitation of the Commissioner of Education and other high-level government officials in order to assist the Territory in reconstructing its schools and other public facilities after one of the worst natural disasters in Virgin Islands history,[17] it would render the procurement system anything but "economic and efficient" going forward.

If a comparable natural disaster were to devastate the Territory's infrastructure in the future, potential vendors could well decline to do business with the Government at all, or perform emergency work only if they receive a full upfront payment, given the risk that the Government may refuse to honor the promises of its officials after the work has been performed. And reconstruction efforts might be delayed while a multitude of lawyers on both sides pore through the myriad of statutes and regulations pertaining to procurement and government contracts, given that even the most minor violation of procurement statutes and regulations could cause the agreement to become completely unenforceable.

 Therefore, we decline to interpret section 249(a) as prohibiting all quantum meruit causes of action against the Government. Accordingly, a contractor may recover in a quantum meruit action against the Government in the absence of a valid contract where the Government was enriched at a contractor's expense, the Government had knowledge of the benefit, and "the circumstances were such that in equity or good conscience" the Government should compensate the contractor for the services provided. *Cacciamani*, 61 V.I. at 251 n.2 (quoting *Walters*, 60 V.I. at 776).[18]

---

[17] In fact, the property damage caused by Hurricane Marilyn was so extensive that "five months after the hurricane, many low-income residents of St. Thomas were still living in emergency shelters or in condemned homes." *Hawksbill Sea Turtle v. Federal Emergency Mgmt. Auth.*, 126 F.3d 461, 466, 37 V.I. 526 (3d Cir. 1997).

[18] It bears emphasizing that we only hold that a quantum meruit claim against the Government is not barred from proceeding as a matter of law, and make no comment on the merits of Vanterpool's claims in this case. We leave it to the Superior Court to determine on remand whether Vanterpool submitted sufficient evidence at summary judgment to create a genuine issue of material fact on the elements of his quantum meruit claim. And, as stated earlier, this action must fail if Vanterpool knew or should have known that the contract was illegal, if he contributed to the violation of the statutory contracting procedures, or the contract involved any form of fraud or collusion. *See Amdahl Corp.*, 786 F.2d at 395 (emphasizing that the "goal

Thus, the grant of summary judgment to the Government must be reversed on the quantum meruit claim as well.[19]

## III. CONCLUSION

 The Superior Court erred when it invoked District Court Rule 56.1 as a basis to accept the Government's statement of undisputed facts without conducting an independent review of the entire record, we reverse the grant of summary judgment, and direct the Superior Court, on remand, to conduct a proper summary judgment analysis in light of this Court's interpretation of sections 236, 239, and 249 of title 31 of the Virgin Islands Code. Accordingly, we reverse the July 12, 2013 opinion granting the Government's cross-motion for summary judgment, and vacate the September 4, 2013 opinions denying Vanterpool's post-judgment motions.

---

[of a quantum meruit action against the government] was to protect *innocent* contractors" (emphasis added)).

[19] In its cross-motion for summary judgment, the Government also argued that Vanterpool's claims are all barred under the statute of limitations. The Superior Court, however, never addressed the Government's statute-of-limitations argument in its July 12, 2013 opinion, and the Government has not addressed the statute-of-limitations issue in its appellate brief or requested that this Court affirm the Superior Court on that alternate ground. Therefore, we do not address the statute-of-limitations issue as part of this appeal. *United Corp.*, 55 V.I. at 720 n.16. Nevertheless, we note that this Court has previously held that the statute of limitations on a cause of action begins to run from the date the cause of action accrued, which ordinarily is the date upon "occurrence of the essential facts that give rise to that cause of action." *Anthony v. FirstBank V.I.*, 58 V.I. 224, 230 (V.I. 2013) (quoting *Burton v. First Bank of P.R.*, 49 V.I. 16, 20 (V.I. Super. Ct. 2007)); *see also Sunoco, Inc. (R & M) v. 175-33 Horace Harding Realty Corp.*, 969 F. Supp. 2d 297, 304 (E.D.N.Y. 2013) ("[A] cause of action for breach of contract did not accrue until . . . the Defendant refused to pay."); *Olson v. Rugloski*, 277 N.W.2d 385, 387-88 (Minn. 1979) (stating that a contract is breached when a party "refuses to pay or unreasonably delays payment of an undisputed amount"). These principles apply in quantum meruit cases as well. *See, e.g., Zic v. Italian Gov't Travel Office*, 149 F. Supp. 2d 473, 476 (N.D. Ill. 2001) (citing *Rohter v. Passarella*, 246 Ill. App. 3d 860, 617 N.E.2d 46, 52 (1993)) (quantum meruit "cause of action accrues upon presentment and subsequent rejection of a bill for services"); *Maglica v. Maglica*, 66 Cal. App. 4th 442, 78 Cal. Rptr. 2d 101, 106-08 (1998) (when the statute of limitations begins to run depends upon the nature of the parties' relationship and expectations as to when compensation would be due); *Generation Partners, LP v. Mandell*, 2011 Conn. Super. LEXIS 1913, at *10 (Conn. Super. Ct. July 22, 2011) (statute of limitations began to run on claims of quantum meruit and unjust enrichment when defendants refused demand for payment, as this was "the earliest point in time that the plaintiffs could have suffered an injury").